WESTERN TOWNSITE COMPANY, Appellant, v. LAMRO TOWN SITE COMPANY, Respondent.

(139 N. W. 777.)

1. **Contract—Vendor and Purchaser—Time as of the Essence.**

Unless, under a given contract of purchase of land, it plainly appears that its object and purpose depends upon its being performed by a given date, time will never be construed to be of its essence, under Sec. 1267, Civ. Code. The general object of a contract being the purpose for which the promise thereunder was made, the particular day named is merely formal. So held, where, pending a contest to remove the county seat from L. to W., rival towns in the contest, the L. town site company contracted with the W. town site company, through its agent, to sell for a consideration payable in installments on certain dates certain land, providing that certain business institutions in L. should then have been removed to W. town site, and that if such buildings were not so removed, all checks and moneys deposited in escrow by W. town site should be returned, there being, however, no provision for forfeiture of any part of purchase price in case of failure to bring about removal of county seat; the purpose of the contract being to eliminate L. town site from said contest and obtain removal of its inhabitants to W. town site and to secure their influence

and votes, $4000. of the $10,000. purchase price being payable for that purpose.

**2. Rescission of Contract—Prior Performance—Restitution.**

Rescission of such contract will not be permitted, when no effort was made by purchaser to rescind until more than one-half of the people had removed from L. town site, and where the removal called for had substantially occurred before the date of the election, and W. town site was voted the county seat, and such removal had conferred upon plaintiff every benefit contemplated by it under the contract, although the removal did not take place as fast as contracted for; it further appearing that restitution by plaintiff would have been impossible.

**3. Contract—Injunction Against Transfer of Purchase Money Checks.**

To allow plaintiff, under such contract, to retain all expected benefits of its enterprise in promoting a town site competitor for county seat, and to enjoin the L. town site company from reaping any reward for its efforts, would be inequitable, and plaintiff has no such right.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Gregory County. Hon. R. B. Tripp, Judge.

Action by Western Town Site Company against the Lamro Town Site Company and others, for rescission of a contract of sale of lands, and to enjoin the transfer of checks deposited as purchase money. It appears only inferentially in the record that the land in question is located in or adjacent to the town of Lamro. From a judgment for defendants, plaintiff appeals. Affirmed.

*Patterson & Harvey,* and *W. J. Hooper,* for Appellant.

In this case the plaintiff was entitled to an injunction restraining negotiation of the checks. The main purposes of the action was to have the contract which was the consideration for all the checks declared void and the checks cancelled. The court had jurisdiction to grant the injunction restraining the negotiation of the checks and the payment by the bank, and acquired jurisdiction for all purposes. Pomeroy's Equity Jurisprudence, Vol. 1, Sec. 236, and foot notes.

It is true that the first portion of the contract is an absolute contract of purchase and sale of the land described therein for the sum of ten thousand dollars, but this is followed by certain

conditions and by a final proviso that if the conditions were not complied with, the contract should be void and the checks and moneys should be returned.

"In construing the contract, the intention is to be collected, not from detached parts of the instrument, but from the whole of it. And all parts of the writing, and every word in it, will, if possible, be given effect." 9 Cyc., p. 579.

Where such contracts make time or performance a condition, the party bound must perform within the time specified or the contract lapses so that it cannot thereafter be endowed with the quality of mutuality and the party not bound never becomes liable thereunder.

The Lamro Townsite Company agreed to have six buildings removed from Lamro to Winner by the first of July, 1910, in which case Two Thousand Dollars should be paid. These buildings were owned by different parties, and of course this provision of the contract could not be enforced by the plaintiff, and therefore it was purely condition with the defendants, whether they would comply with it or not. In case they did, the two thousand dollars should become due, subject, however, to be returned as hereinafter stated. Will it be contended that unless the defendants had complied with this provision of the contract at the time fixed, they could have collected the two thousand dollars?

It will be contended, however, that because the party of the first part complied with the first provision of the contract and induced six of the business houses in the town of Lamro to be removed to Winner on the first of July, 1910, that said sum of two thousand dollars became absolutely due. The proviso, however, set out, provided that in case the said contract was not fully performed, all checks and moneys which were deposited by the party of the second part should be returned to the party of the second part, and the said contract should become null and void.

No other construction can be placed on this provision of the contract than that the contract should be an absolute nullity by reason of the default of the defendants in complying promptly with the terms of the said contract. This provision states that all money should be returned. No money was to be paid until July the first, and then only on condition that the six buildings had been moved

over. Supposing the two thousand dollars had been paid, the defendants failing to comply with the conditions under which the other two payments were to be made, forfeited the contract and the plaintiff would have the right to recover back the two thousand dollars so paid under the express terms of this contract.

It would be idle to require the plaintiff to pay the two thousand dollars and then to compel him to bring an action to recover it back. The law never requires idle acts.

But defendants will contend that they have complied with some of the terms of this contract and should be entitled to part of the consideration to be paid on account of their loss. This has been settled by our supreme court in the case of Hanschka v. Vodopich, et al., 20 S. D., 551; Clark v. Am. Min. Co., 72 Pac. 978; Reddish v. Smith, 10 Wash.,178; 38 Pac., 1003; 45 Am. St. Rep., 781; Lawrence v. Miller, 86 N. Y., 131.

No right or estate dependant upon a condition precedent arises or vests until the condition is performed and time of performance of the condition is essential. Time is always of the essence of the contract when expressly stipulated; when it becomes material to the rights and interests of the parties; by notice from the party entitled to performance insisting upon it at a time fixed; by the subject matter of the contract and its surrounding circumstances. Mitchell v. Wilson, 4 Edw. Ch., 698; 6 N. Y. Ch. Reps., Co-op. Ed., 1023, and case notes.

To make time the essence of the contract no particular form of expression is necessary; any clause will have that effect which clearly provides that the contract is to be null if fulfillment is not within the prescribed time. 3 Pom. Eq. Jr., 455; Garrelson v. Van Loon, 3 G. Green, 128; 58 Am. Dec., 494; Utley v. S. N. Wilcox Lumber Co., 26 N. W., 488.

A clause of forfeiture inserted in the contract is sufficient to make time essential. (Wells v. Smith, 2 Edw. Ch. 78; 6 N. Y. Ch. Reps., Co-op. Ed. 315). The same rule is recognized in this state. Chambers v. Roseland, 21 S. D. 208; Jones v. U. S. 96 Otto, 24, 24 L. Ed. 644.

It is entirely competent for the parties to agree upon what shall be the effect of non-compliance with any of the stipulations of their contracts, and they may agree that the time and perform-

ance shall be treated as essential and the courts will uphold and enforce any clearly expressed intention to that effect.   9 Cyc. 604.

The parties to this contract have agreed that failure to comply with the terms of the contract should make it a nullity and that the checks should be void.   The parties having agreed to this, the court will enforce the agreement.   Henley v. Swanstrone, 41 Mo., 1029; Irslyn v. Schwend, 88 N. W. 410; Mackey and another v. Ames, (Minn.) 16 N. W. 541; Kraus v. Kraus, (Ill.) 44 N. E., p. 736.

The respondent contends that if the contract is declared void and they are not allowed to recover on the checks, it would be enforcing a penalty against them which is not favored in the law. If this be correct, the court cannot relieve them.   They made the contract with their eyes open; no fraud or deception was practiced on them; they agreed to remove these buildings or to cause these buildings to be removed within a stated time.   It was the intention of the plaintiff to have these buildings in Winner before the 20th of July.   This plaintiff evidently had some urgent reason for having them there at that time.   A vigorous county seat contest was approaching, and can this court say that a few days' delay would not be material to it?

The defendant agreed to have these buildings at Winner on or before the 20th of July or the contract should be void.   Failing to do this, we submit that the contract was not enforceable.   However, we do not concede that there was a penalty.   All that the defendant lost by failure to comply with the contract was the right to recover on these checks.   It was the agreement made and the defendant ought to be bound by it.

*Winsor Doherty,* and *French & Orvis,* for Respondent.

The last paragraph of the contract does not provide that if the various business institutions and buildings are not moved from Lamro to Winner by July 1, July 15 or July 20, that all checks and moneys deposited in the Lamro State bank shall be returned to A. E. Kull, the party of the second part, and that the contract shall be made null and void, but simply provides that in case the party of the first part shall fail to move or cause to be moved, the various buildings and business institutions as provided for, that in such case all checks and moneys shall be returned and the contract be made null and void.

Buildings and business institutions as provided for, moved, when? The contract does not state. The essential part of the contract to be performed by the Lamro Townsite company in addition to conveying the land was that the buildings and business institutions provided for should be moved from Lamro to Winner. The exact time when these buildings and business institutions should be moved was not material and was not declared to be material or of the essence of the contract.

When the purpose of the contract is considered, and when it is considered that at the time of the trial of this case, 90 per cent of all the buildings formerly in the town of Lamro had been moved to Winner, that Lamro as a town had practically ceased to exist, and that the county seat of Tripp county had been moved from Lamro to Winner, this result presumably having been brought about largely through the influence of the members of the Lamro Townsite Company, and when it is considered that on July 20, 1910, fifty-three per cent of all buildings formerly in the town of Lamro had been moved to the town of Winner, it is apparent that the Lamro Townsite Company in good faith endeavored to comply with the contract; that they used their influence to secure the selection of Winner as the permanent county seat of Tripp county; that they caused the removal of practically the whole town of Lamro to Winner and did everything they obligated themselves to do.

We submit that this contract does not by its express terms fix the time when the buildings and business institutions shall be moved. It merely fixes the times of payment for the land.

The question then is, did the contract and all the checks become absolutely null and void because of the fact that the full 80 per cent of the buildings mentioned in the contract were not moved to Winner by July 20, 1910? If the contract is bilateral, as it plainly appears to us to be, then time is not of the essence unless expressly so provided in the contract. Section 1,267 of the Revised Civil Code; Section 1158 Rev. Civ. Code.

Nowhere in the last paragraph of this contract is it expressly declared in words, nor does it appear by inference, that time is made of the essence of this contract.

The plaintiff has never contended that the Lamro Townsite company did not fully comply with the contract up to July 20th,

1910, yet on the 18th day of July, 1910, when the two checks for $2000.00 each were presented by the Lamro Townsite company to the Bank of Dallas, upon which said checks were drawn, payment was refused, under the direction of this plaintiff.

There is one other proposition, that of just and exact compensation. The paragraph of the Statute, Section 1158 of the Civil Code, "Where delay in performance is capable of exact and entire compensation etc.—" Blackburn v. Reilly 47 N. J. 290.

The rule is, that defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other deliveries or payments stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract or a design no longer to be bound by its terms. This rule leaves the party complaining of a breach to recover damages for his injury on the normal principle of compensation, without allowing him the abnormal advantage that might inure to him from an option to rescind the bargain.

We say if the buildings "provided for above" were moved within a reasonable time, the Lamro Townsite company complied with the conditions of the contract by it to be performed.

It must be assumed under the findings of fact, that the allegations of plaintiff's complaint that the Lamro State Bank and Mr. Mitchell, its cashier, threatened to deliver to the Lamro Townsite company the check for $4,000 and other allegations not proven, were not true. No facts were proven showing that plaintiff was entitled to equitable relief. No facts were proven showing that there was any danger whatever of the $4,000 check coming to the possession of the Lamro Townsite company until 80 per cent of all the buildings formerly in the town of Lamro should be moved to the town of Winner, or that threats had been made, or that there was danger of any action being brought to recover on the $4,000 check.

In the action brought by the Lamro Townsite Company to recover upon the two checks for $2,000 each, which became due on July 1st and July 15th respectively, the Western Townsite Company could have intervened. No court would have denied their application for intervention, and in the action the plaintiff could have set up any defense or claimed defense it desired against the payment of the checks. No facts were stipulated in this case, and

no evidence was offered to prove that any defense, legal or equitable, which plaintiff had or imagined it had, against the payment of the checks, was in danger of being lost, and for all these reasons no ground existed upon which plaintiff was entitled to equitable relief in this action.

POLLEY, J., This is an equitable action brought by the Western Town Site Company against the Lamro Town Site Company, Lamro State Bank, the Bank of Dallas, et al., for the purpose of compelling the return and cancellation of a certain contract and checks drawn by the Western Town Site Company against the Bank of Dallas and in favor of the defendant Lamro Town Site Company. The controversy grew out of a certain contract entered into on the 7th day of May, 1910, by the Lamro Town Site Company and one A. E. Kull, who was acting as agent for the plaintiff, Western Town Site Company, a corporation organized for the purpose of promoting town sites in Gregory, Tripp, and other counties.

In order to understand the conditions of the contract, it will be necessary to set it out in full. It is as follows: "This contract, entered into this 7th day of May, 1910, by and between the Lamro Town Site Co., Incorporated, party of the first part, and A. E. Kull, of Burke, S. D., party of the second part, wherein the party of the first part agrees to sell to party of the second part the following described property: The southwest quarter of section nineteen (19) in township ninety-nine (99) north, of range seventy-six (76) west, of the 5th P. M., for a consideration of ten thousand dollars ($10,000), to be paid for as per conditions hereinafter set forth: Party of the second part to deposit a certified check for two thousand dollars ($2,000.00) with the Lamro State Bank, said amount to be paid to the party of the first part on the first day of July, 1910. Provided, however, that at least six of the following business institutions of Lamro, S. D., shall have moved to the town of Winner, S. D., or shall have in course of construction substantial business buildings in said town of Winner, S. D., to be occupied by them: Lamro State Bank; C. Kissling; Sas and Ketchmark; Smith and McGrivey; Hall & Greives; S. N. Opdahl, or Jay Weaver. Party of the second part further agrees to pay party of the first part two thousand dollars ($2,000.00) on the 15th day day of July, 1910, for which amount a certified check has been de-

posited with the Lamro State Bank, provided that at least twelve of the business institutions now located on the Main street of Lamro, S. D., shall have moved to the town of Winner, S. D. Be it also provided that party of the second part shall deposit with the Lamro State Bank a certified check for $4,000.00 to be paid to the party of the first part on July 20, 1910; provided, however, that at least eighty per cent. of all the buildings now located in the town of Lamro, S. D., shall have been moved to the town of Winner, S. D. Party of the second part further agrees to assume a mortgage of $2,000.00 now on said land. The party of the first part to deposit with the Lamro State Bank a warranty deed conveying above described land to A. E. Kull, together with abstract showing clear title with all interest and taxes paid up to date, and free from all incumbrances except the mortgage above provided for, said deed to be delivered to A. E. Kull when the above payments shall have been made as provided for. Be it provided, that in case the party of the first part shall fail to move, or cause to be removed, the various buildings and business institutions as provided for, then in that case all checks and moneys having been deposited by the party of the second part as provided for in this contract shall be returned to said party of the second part, and this contract shall be made null and void. The Lamro Town Site Co., Incorporated. By ————, President. By ——————, Secretary. (Signed) A. E. Kull, Second Party."

Pursuant to the terms of the contract, the Lamro Town Site Company deposited with the Lamro State Bank a warranty deed, conveying the said quarter section of land to the said A. E. Kull, together with an abstract showing clear title, with all interest and taxes paid up to date and free from all incumberance, except the said mortgage. The said Kull, as agent for the Western Town Site Company, deposited three checks in the Lamro State Bank, drawn on the Bank of Dallas, and in favor of the Lamro Town Site Company. Two of these checks were for $2,000 each; the other for $4,000. Each check was certified by the Bank of Dallas, by E. A. Jackson, its president, and each of them had plainly written on its face: "To apply on land per contract." The plaintiff's said agent also deposited in the Bank of Dallas a sufficient sum of money to pay each of these checks.

At the time of entering into the contract, Lamro was a town

of 500 to 600 inhabitants; it contained 150 buildings, of all kinds, and was the temporary county seat of Tripp county. The plaintiff, Western Town Site Company, was the owner of the town site of Winner, situated about 2½ miles from Lamro and on the proposed line of the Chicago & Northwestern Railway. It was a candidate for the permanent county seat of Tripp county at the general election to be held in November, 1910. While the contract, on its face, appears to be for the sale and purchase of a quarter section of land, the real object of it was to eliminate Lamro from the contest as a candidate for permanent county seat, to bring about the removal of the inhabitants of Lamro to the town of Winner, and to secure their influence and their votes for Winner as the permanant county seat.

It was stipulated by all parties to the action at the trial that the land in question, at the ime of making the contract was worth $6,000, and no more; so that the other $4,000 of the purchase price was to go to the Lamro Town Site Company as compensation for its influence and efforts in causing the removal of the people of Lamro to the town of Winner. The Lamro Town Site Company proceeded in good faith and with diligence to carry out its part of the contract, and on the 1st day of July, 1910, had succeeded in moving or causing the removal, of 6 of the enumerated business institutions of Lamro to Winner; by the 15th of July, it had moved, or caused the removal, of 12 of the business establishments of Lamro—11 of which were from Main street—to the town site of Winner; by the 20th of July, it had succeeded in moving, or causing the removal, of 53 per cent. of the whole town of Lamro to the town site of Winner; and prior to the 15th of March, 1911, had succeeded in moving, or causing the removal, of 90 per cent. of all the people of Lamro to Winner. In other words, it had practically moved the town of Lamro onto the town site of Winner. On the 18th day of July, 1910, the two checks for $2,000 each were presented for payment by the Dallas State Bank to the Bank of Dallas, on which bank they were drawn and payment refused, for the reasons, as given by the cashier, that it had not been furnished with satisfactory proof that payment of the checks was then due, and that: " we do not believe the instruments are negotiable." On the 21st day of July, 1910, the Western Town Site Company served upon the Lamro Town Site Company a written

notice, notifying it that it had failed to perform the conditions of the said contract of May 7th, and that the Western Town Site Company had therefore elected to rescind said contract and declare the same null and void.   Thereafter, and prior to the commencement of this action, the Lamro Town Site Company commenced an action in the circuit court of Tripp county against the Bank of Dallas to recover the $4,000 and interest due on the said checks, and that suit is still pending.  At the commencement of this action, a temporary injunction was issued, restraining the defendant Lamro Town Site Company from further attempting to collect said checks, and from further prosecution of the action then pending, until the disposition of this action.

At the trial, the facts were stipulated in writing by all the parties, and thereafter the court entered its conclusions of law and final judgment, dismissing plaintiff's complaint and discharging said temporary restraining order.   The judgment of dismissal is assigned as error, and appellants have presented two propositions of law for disposition: First, that, by the terms of the agreement, time is of the essence of the contract, and that, the Lamro Town Site Company having failed to bring about the removal of a specified number of Lamro people by a given date, the contract became forfeited, and it was entitled to rescind; and second, that the checks involved are negotiable, and, to prevent them from being negotiated and passed into the hands of innocent purchasers, it is necessary to have them canceled by a court of equity.

[1] Whether time is of the essence of a contract depends not so much upon the express wording of the particular contract as upon the object and purposes of the agreement. It is a question of construction, and, unless it plainly appears that the object and purpose of the contract depends upon its being performed by a given date, time will never be construed to be of the essence of the contract. Section 1267, C. C., is as follows: "Time is never considered as of the essence of a contract unless by its terms expressly so provided." In 9 Cyc. 605, the rule as to whether time is of the essence of the contract is said to depend upon: "Whether, in fact, the performance of the contract by one party was meant to depend upon the other's promise being fulfilled by the day named therefor, or whether a day was named merely in order to secure performance within a reasonable time."

And Judge Maxwell, in Homan v. Steele, 18 Neb. 657, 26 N. W. 476, states the rule as follows: "That when there is nothing special in the nature of the property, or of the purposes for which it was intended, although a particular day may be fixed for the completion of the contract, yet the general object being the accomplishment of the purpose for which the promise was made, viz., the completion of the contract, the particular day named is merely formal."

With these rules as a guide, and keeping in mind the object and purposes of this contract, to-wit, the removal of the people of Lamro to Winner, the elimination of Lamro as a candidate for county seat, the influence and votes of the people of Lamro in favor of Winner, and the securing of the county seat for Winner, let us examine the conditions of this agreement: The contract was for the sale of a piece of land; the consideration, in addition to paying an encumbrance of $2,000, was $8,000; $2,000 of this sum was to be paid on the 1st day of July, provided the Lamro Town Site Company had moved, or caused the removal, of certain enumerated business establishments in Lamro to Winner; but it does not provide that the $2,000 should be forfeited in case of the failure to bring about the removal of said business establishments. The same is true in regard to the two other payments; so that, so long as the one party continued to diligently carry out its part of the contract and the other party to accept the benefits thereof, the only effect that the failure to remove this specified number of establishments by the given dates would be to defer the date of the payments till the happening of that contingency. It is conceded by appellant that the specified number had been moved by the 1st of July, and that every covenant on the part of the Lamro Town Site Company was complied with up to that date. This entitled it to the payment of the $2,000 due at that time. By the 15th of July, it had caused the removal of 12 establishments, all but one of which was from Main street; but it continued diligently with its efforts and must have had the specified number removed within a day or two, because only five days later, on the 20th of July, it had succeeded in causing the removal of more than one-half of the entire town of Lamro.

[2]. The appellant, up to this time, had made no objection to any failure of performance on the part of the Lamro Town Site

Company, and, so far as appears from the record in this case, both of the $2,000 checks were due when they were presented for payment on the 18th of July; and, in refusing to pay the same, the appellant, or rather the Bank of Dallas, which was officered by the same individuals, was guilty of the first default. It is true that the removal did not take place quite as fast as the contract called for, and the plaintiff undertook to rescind; but it is also true that this was not attempted until after more than one-half of the people of Lamro had been removed to Winner. The stampede was on, and it is not at all likely that anything could have prevented the others from going, and restitution by the plaintiff would have been impossible. Winner secured the population of Lamro, and the permanent county seat as well. It does not appear just when the Lamro Town Site Company succeeded in causing the removal of 80 per cent of the people of Lamro, nor, for the purpose of this case, is it material. Keeping in mind the real purpose of the contract, its every object was accomplished not later than the date of the general election, in November, 1910. This is as early as the contest could be finally determined; and whether or not 80 per cent. had been removed before this time, it is certain that a sufficient number was removed to confer upon the plaintiff every benefit it had in contemplation when entering into the contract. This being the case, we are unable to hold that time is of the essence of this contract; and plaintiff is in no position to come into a court of equity and ask for a cancellation of this contract and to have the Lamro Town Site Company enjoined from further attempting to collect the checks.

[3]   To allow the plaintiff to retain all the expected benefits of this enterprise, and to enjoin the Lamro Town Site Company from reaping any reward for its efforts, would be a most unequitable thing to do. "He who seeks equity, must do equity."

This disposes of all of the equitable features of the case, and dispenses with the necessity of deciding whether the checks are negotiable or nonnegotiable. The appellant has shown no right to have the transfer of the checks enjoined, even though they were negotiable.

No reason appearing why any party to this proceeding has not a complete and adequate remedy at law, the judgment of the trial court is affirmed, and all parties remanded to their rights at law.