FARMERS COOPERATIVE ASS'N, Appellant v.
DOBITZ, Respondent

(240 N.W.2d 116)

(File No. 11701. Opinion filed March 30, 1976)

**Newell E. Krause**, of **Lakeman & Krause**, Mobridge, for plaintiff and appellant.

**Curtis W. Hanks**, Lemmon, for defendant and respondent.

DUNN, Chief Justice.

This is an appeal from a judgment of the Circuit Court of the Eighth Judicial Circuit, dated April 28, 1975, relieving defendant Dobitz from the terms of a contract dated June 12, 1973, requiring him to sell 10,000 bushels of wheat to the plaintiff elevator at a fixed price. Plaintiff contends that the trial court erred in finding that the words "to August Delivery" were vague and ambiguous, and then concluding that this phrase meant up to the first day in August, thus relieving defendant of further deliveries after August 1, 1973. We reverse.

On June 12, 1973, defendant went to plaintiff elevator in Thunder Hawk, South Dakota, to check on the market price of wheat. He talked to the elevator manager, Elmer Trautman, and he and plaintiff entered into a contract whereby defendant agreed to sell and plaintiff agreed to purchase 10,000 bushels of wheat. The contract price was to be $2.30 to $2.35, depending on the protein content of the wheat actually tendered. A written memorandum of the agreement was prepared and was signed by both defendant and by Trautman as an agent of the plaintiff. The memorandum set out the quantity of wheat and the price, and it also contained the words "to August Delivery." The words were apparently written by Trautman. Defendant Dobitz received a copy of the contract and a copy was retained by the plaintiff.

Since defendant did not have a suitable truck, it was orally

agreed that one Hank Uhrig would haul the wheat to plaintiff elevator. Uhrig was contacted by defendant and agreed to do the hauling. Trautman was to notify either Uhrig or defendant when the grain could be delivered. The wheat to be sold was wheat which had been harvested in previous years and was being stored in bins on defendant's farm. According to Trautman's testimony, he mentioned to defendant that deliveries to the elevator could be made as soon as railroad cars became available. Apparently the elevator was full to capacity throughout that entire summer and plaintiff could not accept any more grain until it could get cars to ship out the grain which was already on hand.

According to the testimony of defendant and his wife, they each made numerous inquiries at the elevator during the month of July 1973, as to when they could begin bringing in the 10,000 bushels of wheat. They said that each time they inquired they were told by plaintiff's employees that the elevator was full and that there were no railroad cars available. The defendant testified that he wanted to get the wheat shipped because he needed the bin space on his farm for his upcoming 1973 harvest.

Defendant did deliver 2,509.32 bushels of wheat to plaintiff between July 28, and August 9, 1973. Uhrig did the hauling for defendant. Defendant was paid the contract price of $2.30 per bushel for the wheat delivered, although there is evidence that he tried to get Trautman to pay him the then current market price for wheat which was considerably higher than the contract price.

No further deliveries were made in August. On August 29, or 30, 1973, Trautman called defendant and asked him if he was ready to deliver the rest of the wheat. He said that there was now sufficient elevator space available. Defendant replied that he would not deliver any more wheat.

According to the record, defendant sold the bulk of his wheat to the McIntosh Equity Exchange at Watauga, South Dakota. He sold 541.83 bushels at Watauga on August 28, 1973, and 5,014.15 bushels on September 11, 1973. For this wheat he received the market price which was slightly over $4.00 per bushel.

Defendant did deliver 2,845.68 bushels of wheat to plaintiff elevator beginning September 5, 1973. The grain was stored rather than sold outright. The trial court found that defendant delivered the grain to Thunder Hawk because the pit in the ·elevator at Watauga was full of water; that Trautman offered to pay defendant the contract price of $2.35 for the wheat in this delivery; that defendant refused that price and demanded the return of his wheat; and that this demand was rejected by plaintiff.

On December 13, 1973, defendant and Trautman met and it was agreed that defendant would be paid the contract price for the 2,845.68 bushels delivered in September. Defendant contends that this was in full settlement of the contract, but plaintiff denies this contention. There was no pleading by the defendant of the affirmative defense of accord and satisfaction under SDCL 15-6-8(c), and the trial court's finding No. 4 on this point cannot be supported by the pleadings or the record.

Defendant refused to make further deliveries, and plaintiff sued for damages based on the balance of wheat due under the contract, and this trial to the court ensued. After hearing the evidence, the court found for defendant.

Plaintiff argues that even if the term "to August Delivery" meant up to August 1st, defendant should not have been relieved of responsibility to deliver under the contract on that date because the time of delivery was not an essential term in the contract. He cites SDCL 53-10-3 which provides:

"Time is never considered as of the essence of the contract, unless by its terms expressly so provided."

We agree with the plaintiff. In Western Town Site Co. v. Lamro Town Site Co., 1913, 31 S.D. 47, 139 N.W. 777, this court had an opportunity to construe SDCL 53-10-3. In that opinion the following was written:

"Whether time is of the essence of a contract depends not so much upon the express wording of the particular

contract as upon the object and purposes of the agreement.

"It is a question of construction, and, unless it plainly appears that the object and purpose of the contract depends upon its being performed by a given date, time will never be construed to be of the essence of the contract." 31 S.D. at 57, 139 N.W. at 779.

The above language was cited with approval the same year when a similar question was presented in Phillis v. Gross, 1913, 32 S.D. 438, 143 N.W. 373.

■ In the instant case the memorandum of the agreement contained only the words "to August Delivery." There were no other words which expressly made time of delivery essential to the contract. The parties differed in their testimony as to what they interpreted the term to mean. Defendant said that he thought that all deliveries of wheat had to be made before August 1, 1973. Trautman, plaintiff's manager, testified that he thought that the term meant that deliveries could be made when boxcars became available and through August 31, 1973. The court found as a fact that the term was vague and ambiguous. We fail to see how time of delivery could be considered an essential term of the contract when the parties themselves had no meeting of the minds as to what the term meant.

Furthermore, we can find nothing in the record to indicate that time of delivery was an essential term. We have considered the "object and purposes of the agreement" as did the court in Western Town Site, supra. It is clear that at the time of contracting, defendant wanted to sell 10,000 bushels of his wheat at the contract price, but it does not plainly appear that the entire agreement was dependent on plaintiff accepting delivery of all of the grain before August 1, 1973.

It is true that defendant and his wife inquired numerous times about when deliveries could be made, and each time plaintiff's employees told them that they could not yet accept any of the wheat. However, this was not due to any bad faith on the part

of plaintiff, but was simply due to the severe shortage of boxcars which plagued elevators and farmers throughout the midwest during the summer of 1973.

Defendant claims that the term did go to the essence of the contract and that he had to make his deliveries before August 1st in order to insure adequate bin space for the 1973 wheat crop. We reject this argument for several reasons. First, nowhere in his testimony does he indicate that he considered the term "to August Delivery" to be an essential term in the contract when he entered into the agreement and signed the memo on June 12, 1973. Second, he testified that he had sufficient bin space for the harvest after he delivered the first 2,500 bushels of wheat to plaintiff elevator in late July and early August. Third, the record reveals that defendant sold 541.83 bushels of wheat at Watauga on August 28th and 5,014.15 bushels on September 11th. The former sale occurred only one day before plaintiff called for delivery of the remainder of the 10,000 bushels and the latter sale occurred *13 days after the plaintiff called for delivery*. Had defendant needed the bin space that desperately, he should have sold his grain much earlier than August 28th and September 11th. Thus, finding of fact No. 6 by the trial court was clearly erroneous as not being supported by the record. SDCL 15-6-52(a). The only conclusion that can be reached is that defendant's decision to deliver to Watauga rather than to plaintiff elevator was influenced more by the sharp rise in the market price of wheat than a shortage of bin space on his farm.

Plaintiff elevator, on the other hand, upon contracting to buy 10,000 bushels of wheat at $2.30 per bushel on June 12, 1973, from Dobitz, immediately sold that amount of wheat at the going market price in a hedging operation. Any profits from the rising market went to speculators in wheat futures in the commodities market and not to plaintiff. This is not unusual as elevators traditionally resort to this hedging device in order to maintain a constant profit from their processing without concern for fluctuations in the market.

The conclusion that the delivery term was not essential to the contract is further supported by defendant's own actions in

making the initial deliveries to plaintiff elevator. He started hauling wheat on July 28, 1973, and continued to have his trucker make deliveries through the 9th day of August. This may or may not have constituted a waiver of the delivery term in the contract. See SDCL 57-3-22 and 57-3-23. What it does show is that defendant himself could not have felt that the term "to August Delivery" was that essential as he continued to deliver wheat pursuant to contract during the first nine days of August.

We therefore hold that the court erred in concluding that the term "to August Delivery" went to the essence of the contract and relieved defendant of his contractual obligations after August 1, 1973. We are convinced that the delivery term was not essential and that defendant breached the contract by refusing to deliver the balance of the wheat called for in the contract. See Nelson v. Glasoe, 1975, N.D., 231 N.W.2d 766; Farmers Elevator Company v. David, 1975, N.D., 234 N.W.2d 26.

The judgment of the circuit court is reversed and the case is remanded for trial on the issue of damages under SDCL 57-8-34.

All the Justices concur.