**In re Willa Delaine SMART, Debtor.**

**Bankruptcy No. 2–87–02906.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

·March 14, 1989.

Donald G. Mayer, Wilmington, Ohio, for Willa Delaine Smart.

Emerson R. Keck, Allbery, Cross & Turner, Dayton, Ohio, for Dayton Firefighters Federal Credit Union.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

### OPINION AND ORDER ON MOTION TO REOPEN

R. GUY COLE, Jr., Bankruptcy Judge.

#### I. *Preliminary Statement*

This matter is before the Court upon the Motion to Reopen ("Motion") filed by Willa Delaine Smart, the debtor in this closed Chapter 7 case ("Debtor") and the memorandum *contra* to the Motion filed by The Dayton Firefighters Federal Credit Union (the "Credit Union"). Jurisdiction over this case is vested in the Court pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(A). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

#### II. *Factual Background*

The facts underlying the Motion and the Credit Union's opposition thereto are essen-

tially undisputed. Debtor's Motion arises in the context of the following chronology of events:

(1) Debtor filed a petition under Chapter 7 of the Bankruptcy Code with this Court on June 30, 1987;

(2) In the schedules accompanying her petition, Debtor listed the Credit Union as her sole secured creditor. Debtor's schedules reflect that the Credit Union held a claim in the amount of $3,739 and that, as of the filing date, the fair market value of its collateral—a 1980 Plymouth Horizon (the "Automobile") —was $2,000. No mailing address was listed for the Credit Union in Debtor's schedules as is required by B.R. 1007(b)(1). Further, the mailing matrix filed by Debtor omitted the name and mailing address of the Credit Union. The statement of intention filed by the Debtor indicated Debtor's intent to reaffirm its debt to the Credit Union; however, a copy of the statement of intention was not served on the Credit Union as B.R. 1007(b)(3) requires;

(3) Because the Debtor's schedules failed to list the Credit Union's address (and the matrix omitted the Credit Union's name and address), all notices and orders which were to be served upon it in this case by the Bankruptcy Clerk through the Bankruptcy Automated Noticing System (BANS) were returned to the Clerk. In fact, the list of creditors appended to all orders and notices served by the Clerk through the BANS contained an "X" in the address column immediately adjacent to the Credit Union's name;

(4) The Order for Meeting of Creditors, Combined with Notice Thereof and Automatic Stay entered by the Court on July 9, 1987, which, for the reasons described in the foregoing paragraph, obviously was not received by the Credit Union, contained the following language:

SPECIAL NOTICE It appears from the schedules of the debtor that there are no assets from which any dividend can be paid to creditors. It is unnecessary for any creditor to file his claim at this time in order to share in any distribution from the estate. If it subsequently appears that there are assets from which a dividend may be paid, creditors will be so notified and given an opportunity to file their claims.

(5) In July of 1987, shortly after filing her petition, Debtor damaged the Automobile in a vehicular accident. No notice of the automobile accident was provided to the Credit Union at the time of its occurrence;

(6) After the Automobile was damaged, Debtor determined that she no longer desired to reaffirm her obligation to the Credit Union. While the Debtor advised the trustee of this decision at the first meeting of creditors, an amended statement of intention was not filed and served upon the Credit Union as required by B.R. 1009(b);

(7) On August 10, 1987, the Chapter 7 trustee filed a final report and account indicating that any and all assets in the estate were either properly claimed exempt or so encumbered by valid liens that they were burdensome or of inconsequential value to the estate;

(8) On November 19, 1987, an order was issued by the Court granting the Debtor a discharge pursuant to 11 U.S.C. § 727;

(9) On or about November 30, 1987, the Credit Union was informed by counsel for the Debtor that the Automobile had been damaged in an accident the previous July. The Credit Union also was informed at this time that Debtor previously had filed bankruptcy and recently had received a discharge;

(10) On November 30, 1987, or thereabouts, the Credit Union also learned that the Automobile was being stored at Tommy Tumbleson's Garage ("Tumbleson's") in Hillsboro, Ohio. The Credit Union decided not to obtain custody of its collateral after learning that the Automobile was subject to an artisan's lien in favor of Tumbleson's securing payment of unpaid towing

charges of $75.00 and accrued and unpaid storage fees of $1,072.50;

(11) Because it failed to receive prompt notification of the accident involving the Automobile from the Debtor, the Credit Union's insurance claim was rejected by the insurer of the Automobile as untimely;

(12) On December 7, 1987, the Court approved the trustee's final report and account and entered an order closing the case;

(13) On February 2, 1988, the Credit Union instituted a collection action against the Debtor in the Common Pleas Court of Montgomery County, Ohio. To prosecute this collection action, the Credit Union expended approximately $560 in legal fees and costs; and

(14) On September 19, 1988, Debtor filed the instant Motion seeking an order permitting the reopening of her bankruptcy case to enable Debtor to amend her petition to properly list the Credit Union as a creditor. The Credit Union filed its memorandum *contra* to Debtor's Motion on October 14, 1988.

### III. *Legal Discussion*

■ Debtor's Motion is brought pursuant to 11 U.S.C. § 350(b) which provides as follows:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The decision whether to reopen bankruptcy cases to allow amendment of schedules rests within the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion. *In re Jones*, 490 F.2d 452 (5th Cir.1974); *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540–41 (6th Cir.1985).

The controlling precedent relating to the issue of reopening is the Sixth Circuit's decision in *Rosinski*. Acknowledging that "harm to the creditor rather than notice is the key issue here," the *Rosinski* court articulated the following rule: A debtor "may be prevented from [reopening to]

amend . . . her schedule only if her failure to include a creditor on the original schedule can be shown to have prejudiced . . . [the creditor] in some way or have been part of a scheme of fraud or intentional design." 759 F.2d at 541 (citing *Stark v. St. Mary's Hospital (Matter of Stark)*, 717 F.2d 322 (7th Cir.1983); *In re Meile*, 36 B.R. 719, 720 (Bankr.S.D.Ill.1984)). The predominant types of prejudice recognized by the Sixth Circuit as severe enough to mandate a refusal to reopen include: (1) loss by a creditor of its right to participate in a dividend; and (2) loss of the opportunity to obtain a determination of dischargeability. The *Rosinski* decision also requires that a debtor "advance some justification for the reopening sufficient to show that she did not intentionally or recklessly avoid listing the debt." *Rosinski*, 759 F.2d at 542 (citing *In the Matter of Davidson*, 36 B.R. 539, 543 (Bankr.D.N.J.1983)).

■ Having reviewed the arguments of the parties and the record made at hearing, and having considered the legal principles outlined above, the Court concludes that reopening would not be appropriate here. There are two separate and independent factors militating strongly against reopening this case. First, the Debtor has failed to meet the evidentiary burden imposed upon her by *Rosinski*. As noted above, *Rosinski* requires a debtor, as prerequisite to obtaining relief through reopening, to establish that failure to list the previously omitted debt was not fraudulent, intentional or reckless. *Rosinski*, 759 F.2d at 542; *In re Soult*, 88 B.R. 801, 803 (Bankr.S.D. Ohio 1988). A review of the Court file suggests a reckless disregard by the Debtor for the accuracy of her schedules. Debtor did not provide the Credit Union's mailing address in her statement of liabilities as required by B.R. 1007(b)(1). She completely omitted the Credit Union from the matrix list of creditors which was filed with the Court. Debtor likewise failed to serve the Credit Union with her statement of intention as stipulated by B.R. 1007(b)(3). Moreover, Debtor violated B.R. 1009(b) by not filing an amended statement of intention when she decided not to reaf-

firm her debt to the Credit Union. In short, a review of the Court file evinces Debtor's reckless disregard for the accuracy of her schedules and other filings with the Court. In view of this apparent disregard for the accuracy of her schedules and other filings, Debtor's failure to appear and provide testimony establishing that her conduct was not fraudulent, intentional or reckless, as *Rosinski* mandates, is fatal to her request for reopening. As Judge Speer has noted: "Debtors are required to exercise great care in completing their schedules, and must use reasonable diligence in ascertaining the names [and addresses] of all their creditors. The failure to do so results in the continuing validity of the debt." *In re Blossom*, 57 B.R. 285, 287 (Bankr.N.D.Ohio 1986) (citing *In re Lorenzen*, 21 B.R. 129, 131 (Bankr.N.D.Ohio 1982)).

Assuming *arguendo* that Debtor's conduct in not properly scheduling the Credit Union was not intentional or reckless, nevertheless, there is a second and equally compelling basis for denying the relief requested. The *Rosinski* court recognized that a creditor's loss of a right to participate in a distribution or to obtain a determination of dischargeability is so patently prejudicial that, under such circumstances, reopening of a previously-closed bankruptcy case should not be ordered. *Rosinski*, 759 F.2d at 542. Neither of these types of prejudice, it is conceded, were suffered by the Credit Union in this case. There were no assets available to fund a distribution to creditors and the proof of claim bar date was extended indefinitely in the event assets should later be discovered. And, while the deadline for filing an action pursuant to 11 U.S.C. § 523(a)(2), (4) or (6) to establish the nondischargeability of an obligation of the Debtor expired nearly one year before the present Motion was filed, the Credit Union has not argued that its claim would have been nondischargeable had a timely action been commenced. Yet, *Rosinski* does not foreclose a creditor from establishing other types of prejudice as a bar to reopening. *Blossom*, 57 B.R. at 287; *In re Harper*, 72 B.R. 211, 213 (Bankr.S.D.Ohio 1987). As the *Blossom* court noted,

"[w]here a creditor has expended time and effort in attempting to collect a debt which has been omitted from a petition, the expenditure of that time and effort is sufficient harm to the creditor so as not to warrant a reopening of the case." 57 B.R. at 287. *See also, Hawkins v. Landmark Finance Co. (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir.1984) (expenditure of court costs and counsel fees by omitted creditor constitutes prejudice which would bar reopening). Here, Debtor's failure to properly schedule the Credit Union and to serve it with a statement of intention prejudiced the Credit Union in several respects. The Credit Union expended $560 in court costs and legal fees in an attempt to collect the debt owed by Debtor. The Credit Union's insurance claim for damage to the Automobile was denied as untimely. And, the Credit Union was effectively precluded from regaining possession of its collateral because storage fees had accrued in an amount exceeding the value of the Automobile before the Credit Union received notice of either the accident or Debtor's bankruptcy filing. Given the extent of the prejudice suffered by the Credit Union, it certainly would not be equitable to permit Debtor to reopen her bankruptcy case.

Based upon the foregoing, the Motion to Reopen is DENIED.

IT IS SO ORDERED.