### In re Michael M. COOK and Shirley R. Cook, Debtors.

### Bankruptcy No. 385–00039.

United States Bankruptcy Court,
D. South Dakota, S.D.

March 29, 1991.

---

**578**

William J. Pfeiffer, Aberdeen, S.D., for debtors Michael M. Cook and Shirley R. Cook.

Thomas A. Lloyd, U.S. Atty., Pierre, S.D., for Farmers Home Admin.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### ACTION

Michael and Shirley Cook ("Debtors") motioned to discharge chattel liens alleging the debt on chattels has been fully paid as required by their confirmed Chapter 11 Plan. Farmers Home Administration ("FmHA") maintains its 11 U.S.C. § 1111(b) election ("1111(b) election") precludes lien discharge because its collateral includes real estate and chattels irrespective of the Plan's provisions and that the Court lacks jurisdiction. Based on the below enunciated analysis, the Court concludes it has jurisdiction and that FmHA's encumbrances on chattels must be discharged.

### FINDINGS OF FACT

Debtors' 1985 Chapter 11 petition resulted in a confirmed Plan in 1987. FmHA filed a timely 1111(b) election and voted to accept the Plan after initially rejecting it. *Order of Findings of Fact and Conclusions of Law,* ¶ 4 (June 17, 1987). Plan clause Class 1(D) provides that FmHA shall release its liens upon payment under the Plan. The Plan's prepayment clause permitted Debtors to prepay Plan payments due.

FmHA filed a proof of claim for $702,-313.86. Under the Plan, FmHA's $101,-759.68 secured claim in real estate would be fully paid within 32 years, FmHA's $174,245 secured claim in chattels would be paid off in 15 years. The parties agreed to monetize the unsecured payment due, pursuant to the 1111(b) election, through two payments of $25,985 each, due January 1, 2020 and 2021.

Classification of FmHA's claim by chattels and realty tracks distinct and separate loan collateral arrangements as reflected by the security agreements and mortgages attached to FmHA's proof of claim. The attachments include a security agreement on chattels dated June 6, 1984. No other proof of claim attachment bears the June 6, 1984 date or anything close to it. Nor does any loan document expressly include both the real estate and chattels as collateral for any single loan. The record indicates no cross-collateralizing occurred on FmHA's loans to the Debtors.

The Debtors ranch and are current with their Plan payments. Debtors' Chapter 11 was administratively closed in 1987. Debtors paid in full the secured claim on the chattels and apparently has, or shortly will, pay the present value of the two $25,985 unsecured payments due in the 21st century.

FmHA resists Debtors' motion to release chattel encumbrances on grounds of jurisdiction and that an 1111(b) election prevents bifurcation of liens. Specifically, FmHA argues the Court is divested of jurisdiction by Plan confirmation, judicial economy, and the deterrent effect of foisting on the Debtors' added burdens of litigating the matter in a federal district court or a state circuit court. *Hearing Transcript,* at 20–22. FmHA's substantive argument is to interpret the Plan in its entirety and that the 1111(b) election requires that the creditor maintain its lien on all property, real and personal. *Hearing Transcript,* at 12.

### ISSUES

1. Can a bankruptcy court maintain jurisdiction over a closed Chapter 11

case to interpret Plan provisions? Yes.

2. Where an 1111(b) electing creditor receives full payment on its chattel claim and the monetized 1111(b) value as set forth by the confirmed Plan, yet the creditor's secured real estate claim which is not cross-collateralized to the chattels is not yet paid in full, is the chattel claim deemed paid, warranting a release of encumbrances on the chattels? Yes.

## CONCLUSIONS OF LAW

### I. Post–Confirmation Jurisdiction

■ The party bringing a dispute to a bankruptcy court bears the burden of establishing jurisdiction. *In re Radco Merchandising Services Inc.*, 111 B.R. 684, 686 (N.D.Ill.1990); *In re Edwards*, 100 B.R. 973, 977 (Bankr.E.D.Tenn.1989). Debtors must prove the Court has jurisdiction to adjudicate the current lien dispute despite their case being administratively closed since 1987.

■ 28 U.S.C. § 1334(b) grants general jurisdiction of bankruptcy matters to the federal district courts. Judicial proceedings in a bankruptcy case are divided into "core" proceedings and proceedings related to a bankruptcy case. 28 U.S.C. § 157(b); *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 981 (D.Minn.1989). Bankruptcy judges may hear and determine all "core" proceedings under title 11. 28 U.S.C. § 157(b)(1). A bankruptcy court's jurisdiction is broadly construed. *In re Pocklington*, 21 B.R. 199, 202 (Bankr.S.D. Cal.1982). Core proceedings are those central to the adjustment of the debtor/creditor relationship in bankruptcy. *Gaslight Club, Inc. v. Official Creditors Committee*, 46 B.R. 209, 211 (N.D.Ill.1985). A related proceeding is a civil proceeding which conceivably could have an effect on the bankruptcy estate's administration or affect the debtor's rights, liabilities, options, or freedoms of action. *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir.1986). If the instant matter is proven a core proceeding, subject matter jurisdiction is achieved.

■ Subject matter jurisdictional nexus in bankruptcy requires only that the activity in question have some conceivable impact on the bankruptcy reorganization or the estate. *In re Cardinal Industries, Inc.*, 109 B.R. 743, 746 (Bankr.S.D.Ohio 1989). When a bankruptcy petition is filed, and restructuring of financial relations involves the Bankruptcy Code, the bankruptcy court has jurisdiction. *Rudd v. Laughlin*, 866 F.2d 1040, 1042 (8th Cir.1989). Adjudication of the extent of a lien is a core proceeding. 28 U.S.C. § 157(b)(2)(K). Debtors' dispute with the FmHA, involving the extent and validity of FmHA's lien, is a core proceeding.

■ The filing of a proof of claim submits the filing entity to in personam bankruptcy jurisdiction. *See Langenkamp v. Culp*, — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *In re K Lazy K*, 117 B.R. 521, (Bankr.D.S.D.1990). FmHA filed a proof of claim and actively participated in the debtor/creditor relationship in the Plan. FmHA filed responses in the instant matter. The filing of responses without making a special appearance waives any objection to in personam jurisdiction. In personam jurisdiction requires some purposeful contact with the state to comport with traditional notions of fair play and substantial justice. *See Burnham v. Superior Court of California*, — U.S. —, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Papachristou v. Turbines, Inc.*, 902 F.2d 685 (8th Cir.1990). FmHA conducts business in South Dakota establishing minimum contacts to the state. The Court concludes it may maintain subject matter and in personam jurisdiction over the FmHA and Debtors but, the effect of the case's post-confirmation posture on jurisdiction must be considered to adjudicate whether the Court should exercise jurisdiction.

■ The confirmation of a business reorganization plan is binding upon all parties. 11 U.S.C. § 1141(a). Questions which might have been raised are res judicata.

See Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1935); Miller v. Meinhard–Commercial Corp., 462 F.2d 358 (5th Cir.1972). Confirmation vests all estate property in the debtor and discharges debt. 11 U.S.C. § 1141(c), (d). The finality of confirmation though, does not prevent a bankruptcy court from exercising jurisdiction to review its orders where equity so requires. In re Olsen, 861 F.2d 188, 189 (8th Cir.1988); Evans v. Dearborn Machinery Movers Co., 200 F.2d 125, 128 (6th Cir.1952). A confirmed Chapter 11 case connotes finality yet, a bankruptcy court retains limited jurisdiction.

▆▆▆▆ A bankruptcy court's jurisdiction is not without limits. A bankruptcy court lacks jurisdiction to adjudicate wrongful death and personal injury tort claims. In re Vinci, 108 B.R. 439, 441 (Bankr.S.D.N.Y.1989); In re Todd Shipyards Corp., 92 B.R. 600, 604 (Bankr.D.N.J.1988). Debtors' Plan includes a retention statement but, a naked Plan statement of bankruptcy court jurisdiction retention alone, does not justify retention. In re Almarc Corp., 94 B.R. 361, 364–365 (Bankr.E.D.Pa.1988). However, the Plan's terms are relevant in deciding whether retention should occur. Id. The Plan provided for this Court's retention of jurisdiction and the instant matter concerns Plan interpretation.

▆▆▆▆ A bankruptcy court's jurisdiction normally ends once the reorganized plan is confirmed. In re Liberty Music and Video, Inc., 50 B.R. 379, 384 (S.D.N.Y. 1985). A bankruptcy court may exercise jurisdiction over a Chapter 11 case at least until the case is dismissed. See In re American Precision Vibrator Co., 863 F.2d 428 (5th Cir.1989); In re Petty, 848 F.2d 654 (5th Cir.1988); In re Solar Equipment Corp. etc., 19 B.R. 1010 (W.D.La. 1982). Post-confirmation jurisdiction is generally limited to matters concerning interpretation and administration of the Plan. See In re Neptune World Wide Moving, Inc., 111 B.R. 457 (Bankr.S.D.N.Y.1990); In re Johns–Manville Corp., 97 B.R. 174 (S.D.N.Y.1989). The instant matter involves interpretation of the Plan. Confirmation of the Chapter 11 Plan does not automatically terminate the bankruptcy court's jurisdiction. 11 U.S.C. § 350(a); B.R. 3022; In re Tri–L Corp., 65 B.R. 774, 778 (Bankr.D.Utah 1986). Debtors' case was closed, not dismissed.

▆▆▆▆ A bankruptcy court may even exercise jurisdiction over a dismissed case in narrow circumstances. In re Stardust Inn, Inc., 70 B.R. 888, 891 (Bankr.E.D. 1987). Jurisdictional retention factors over a closed case include judicial economy, fairness and convenience to parties, and degree of difficulty of state law issues. The 1111(b) election is a tortuous journey through a statute and its legislative history that is fraught with complex concepts, terms of art, and innuendo. Moller, Chapter 11 of the 1978 Bankruptcy Code or Whatever Happened to Good Old Chapter XI, 11 St. Mary's L.J. 437, 471 (1979). A state or district court would need to expend many resources to understand 11 U.S.C. § 1111(b). FmHA's request to eject the Debtors from bankruptcy court merely to force the Debtors to incur additional costs by litigating in another court for "deterrence" sake, speaks volumes of the choate fairness and convenience of hearing the 1111(b) election issue in a bankruptcy court. No state law issues are involved in the analysis of 11 U.S.C. § 1111(b). The age of the case aside, the four factors provided by the court in Stardust all favor retention even if Debtors' case was dismissed.

▆▆▆▆ The decision to reopen a closed case rests with the bankruptcy judge's sound discretion and is justified provided no prejudice would occur and if cause exists, such as adjudication of liens. 11 U.S.C. § 350(b); In re Walters, 113 B.R. 602, 606 (Bankr.D.S.D.1990); In re Smart, 97 B.R. 380, 382 (Bankr.S.D.Ohio 1989); In re Quackenbos, 71 B.R. 693, 695 (Bankr.E. D.Pa.1987). Debtors' lien adjudication motion does not prejudice FmHA. Debtors' motion is deemed to include a motion to reopen the case. The Court concludes: it has and should exercise jurisdiction over the instant matter; Debtors' case is reopened for the limited purpose of determining FmHA's lien extent; and that the in-

stant matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## II. The Extent of the 1111(b) Election's Lien

The two types of secured creditors who may have their claim treated as totally secured by making a 1111(b) election are recourse and nonrecourse undersecured creditors. James Pusateri, Lloyd Swartz, Mark Shaiken, *Section 1111(b) of the Bankruptcy Code: How Much Does the Debtor Have to Pay and When Should the Creditor Elect?*, *Am.Bankr.L.J.* Vol. 58, 129, 130 (1984). A recourse creditor may hold the debtor personally liable for any deficiency while a nonrecourse creditor cannot, being limited to the collateral. Pusateri, Swartz, Shaiken, *supra*, at 4. The only two situations preventing a creditor from making a 1111(b) election are creditors having an interest in collateral of inconsequential value or a recourse creditor with an interest to be sold at a sale. 11 U.S.C. § 1111(b)(1)(B)(i), (ii). A junior creditor's claim has inconsequential value where the collateral's value does not exceed the senior liens.

The *Parmely Farms* decision, argued before the Court as dispositive, focused on estoppel and whether a Plan provision permitting a sale at the debtor's discretion constituted an interest to be sold which would bar the creditor from making a 1111(b) election. *In re H & M Parmely Farms*, 127 B.R. 639, 641 (Bankr.D.S.D. Dec. 12, 1989), *aff'd*, 127 B.R. 644, 645 (D.S.D.1990). No one questions FmHA's ability to make a 1111(b) election within B.R. 3014's time limit. The parties only disagree on the extent of FmHA's lien. The instant matter centers on the extent of an 1111(b) lien in an 1129(a) confirmed case where no mistake in memorializing the parties agreement occurred which distinguishes *Parmely Farms*.

Generally, a secured creditor who agreed pre-petition to look only to its collateral to satisfy its debt, is limited in bankruptcy to asserting a claim for the collateral's value and receives little on the undersecured portion. 1111(b) allows the undersecured creditor to assert a claim for the amount of the unsecured deficiency and to receive full payment on its allowed claim. 2 *Norton Bankruptcy Law and Practice*, § 58.01 (1990). The electing creditor waives its unsecured claim. *In re North Indianapolis Venture*, 113 B.R. 386, 391 (Bankr.S.D.Ohio 1990). Thus, if an undersecured creditor with a $15,000 claim secured by property worth $5,000 makes a 1111(b) election to be treated as a fully secured nonrecourse claim, it has a secured claim of $15,000 and waives its $10,000 unsecured or recourse claim. A Plan is not confirmable unless the 1111(b) electing creditor receives full payment of the allowed secured claim. *In re Hallum*, 29 B.R. 343, 344 (Bankr.E.D.Tenn.1983). FmHA agreed to Debtors' Plan treatment of the 1111(b) election and the Plan was confirmed. Res judicata binds the parties to their agreement. *Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 891 F.2d 159, 161 (7th Cir.1989); *Matter of Distant Horizon Dream, Inc.*, 110 B.R. 146, 148 (Bankr.D.Del.1989).

A debtor has limited discretion to classify claims into different classes. *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir.1987). Debtors' Plan classified FmHA's interests into secured chattels, secured realty and 1111(b) payments. FmHA voted to accept the creative Plan. Both parties admit the separate classification scheme merely represents the secured claims' value and the monetized value of the 1111(b) election. No classification abuse occurred as evidenced by FmHA's vote accepting the Plan and, such classification is laudable if it helped the parties comprehend the complex 1111(b) election.

FmHA's 1111(b) election choice made economic sense given the midwest's depressed land values during the mid–1980's. The Court takes judicial notice that FmHA made a 1111(b) election often, if not always, in South Dakota agricultural bankruptcy cases during the midst of the 1980s. A 1111(b) election benefits a creditor by giving it a "floating" secured lien which

582

rises if the collateral's value appreciates. For example, a $100,000 claim being secured on collateral worth $80,000 at confirmation, leaves $20,000 unsecured. The election places a $100,000 secured lien on the property so that if the market value of the property increases from $80,000 to $90,000 and the reorganization fails resulting in the collateral's liquidation, the 1111(b) elector is secured on the appreciated $90,000 collateral but the non-electing creditor is only secured for $80,000. Other 1111(b) election benefits include treating the entire claim as secured where the collateral's value is difficult to ascertain or is undervalued and, the electing creditor cannot be cashed out. *See In re Meadow Glen, Ltd.,* 87 B.R. 421 (Bankr.W.D.Tex. 1988); Theodore Eisenberg, *The Undersecured Creditor in Reorganizations and the Nature of Security,* 38 Vand.L.Rev., 931, 939 (1985). Unattractive 1111(b) election attributes include: elimination of the unsecured claim resulting in a loss of voting leverage since the undersecured claim/class is waived; a loss of payments if the Plan provides a substantial distribution to unsecured creditors; a likelihood that payments will be stretched out over a long period to satisfy the requirement that the electing creditor receive its entire allowed claim; and not participating in any net disposable income pledged the unsecured creditors under the *Ahlers* rationale. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); T. Eisenberg, *supra,* at 940. The election was astutely made given that FmHA's claim is deemed fully secured and that the agricultural real estate market would eventually increase.

Keeping FmHA's collateral separate encourages commercial viability because expended chattels require replacement whereas the land, while subject to market value fluctuations, does not become fully exhausted. Farm and ranch real estate, often kept in a family unit for generations, is usually mortgaged for long term debt. In contrast, chattels which tend to depreciate and require replacement quickly, serve as short term loan collateral. *In re White,* 36 B.R. 199, 204 (Bankr.D.Kan.1983).

FmHA's security interest in chattels was not cross collateralized to Debtors' real estate following the customary agricultural loaning practice in South Dakota. Separate classification encourages reorganization because the full payment of each claim excites debtor commitment to finish the Plan. The Plan's handling of the 1111(b) election inspires successful reorganization and commercial viability.

"If . . . an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent such claim is allowed." 11 U.S.C. § 1111(b)(2). The electing creditor receives a lien on the collateral for the full amount of its claim as opposed to a lien limited to the property's value. The lien is secured for the full allowed claim, irrespective of the collateral's Section 506(a) value. 5 L. King *Collier on Bankruptcy,* ¶ 1111.02[5] (1989). The Plan's classification of FmHA's interests into a realty and a chattel claim does not violate 1111(b)'s express language because each of FmHA's claims had separate collateral. The claim on chattels is distinct from the real estate loans as Debtors' loans were not cross-collateralized. 1111(b)(2) allowing "a secured claim to the extent such claim is allowed" does not contemplate cross-collateralizing. FmHA has an allowed claim on chattels and a separate claim on real estate. The allowed claims were not commingled pre-petition.

To cross-collateralize on FmHA's debt post-petition would enhance FmHA's security position because the realty would be secured by the chattels and vice versa. For example, a debtor owing a $1 debt outstanding on a loan secured by a car valued at $13,000 and the same debtor owes the same creditor a separate $10,000 loan secured by real estate worth $4,000, the creditor cannot refuse to release the chattel lien after debtor pays the $1 due because a separate loan remains owed the same creditor. The collateral appreciation benefit provided by 1111(b) cannot be interpreted as a blanket extension of a secured interest.

Nothing in the Bankruptcy Code warrants cross-collateralizing merely because a

creditor holding two separate claims makes an 1111(b) election. Bankruptcy does not broaden the rights of creditors. A "lien" constitutes a charge against property to secure payment of a debt. 11 U.S.C. § 101(37). The 1111(b) lien is charged against each loan's collateral. FmHA cannot unilaterally broaden its pre-petition collateral pool post-petition by making a 1111(b) election. The Court concludes 1111(b) does not result in a cross-collateralized lien where the creditor was not cross-collateralized pre-petition. As it is not cross-collateralized, the claims are distinct and FmHA is entitled to payment of its claim as elected, as if two separate creditors were involved.

■■■■■ Cause exists to discharge the chattel liens even if FmHA was cross-collateralized. FmHA accepted the Plan and did not appeal the 1987 confirmation order. A Plan is a contract consisting of a novation of the previous agreements between the parties. A creditor is bound by a confirmed plan and is not entitled to any better treatment than that which the Plan allowed. *In re Henderberg,* 108 B.R. 407, 411 (Bankr.N.D.N.Y.1989); *In re Horne,* 99 B.R. 132, 135 (Bankr.M.D.Ga.1989). The Plan correctly memorialized the parties intent and no mistake or omission occurred warranting reformation. A confirmed Plan is res judicata binding the parties. *In re Burner,* 109 B.R. 216, 222 (Bankr.W.D.Tex. 1989); *In re Hoffman,* 99 B.R. 929, 936 (D.N.D.Iowa 1989). Altering the security status topples the parties bargain, upsetting the res judicata effect of the Plan, even if FmHA was cross-collateralized on all loans. The Court concludes chattel lien discharge is appropriate, even if the collateral were cross-collateralized because the Plan is a contract binding on the parties.

■■■■■ Confirmation requirements in 11 U.S.C. § 1129(b) are not applicable with respect to a class of creditors that accepted the Plan, even if impaired. *In re Club Associates,* 107 B.R. 385, 398 (Bankr.N.D. Ga.1989). Consensual confirmation through Section 1129(a)(8) means that the unfair discrimination and fair and equitable cramdown requirements of Section 1129(b)

are inapplicable. 2 *Norton, supra,* at § 62.17; S.Rep. No. 989, 95th Cong., 2d Sess. 126–127, U.S.Code Cong. & Admin. News, 5787 (1978).

If 1129(b)'s cramdown applied, the minimum standards require secured claim holders retain their liens to the extent of the allowed amount of such claims and that each holder shall receive deferred cash payments totalling at least the allowed amount of the claimed value as of the effective date of the Plan of at least the present value of the holder's interest in the collateral. 11 U.S.C. § 1129(b)(2)(A)(i)(I), (II). 1129(b) does not specify what retention of the lien entails. 2 *Norton, supra,* at § 63.07. Nonetheless, 1129(a) confirmation renders 1129(b)'s subsections inapplicable. An electing creditor need not even receive what the creditor would get if the case was a Chapter 7 filing when the creditor accepts the Plan. 11 U.S.C. § 1129(a)(7)(A)(i). Consensual confirmation under Section 1129(a) is not subject to the stringent lien requirements of cramdown. Consensual Plan confirmation affects a 1111(b) lien's reach.

The two $25,985 payments are not specifically tied to the real estate or the chattel claim. The two payments represent the monetized value of the 1111(b) election. To provide FmHA with the benefit of its 1111(b) election bargain, the present value of both $25,985 must be paid before Debtors may obtain a release of chattel encumbrances. The effect is that the monetized 1111(b) election will be paid shortly if not already, the chattel secured claim is paid, and the secured real estate claim remains due.

CONCLUSION

A bankruptcy court has jurisdiction over a post-confirmation Chapter 11 case to interpret Plan provisions affecting the debtor/creditor relationship. Debtors' payment of the secured chattel amount and the present value of both $25,985 amounts, mandates a release of FmHA's encumbrances on chattels because different claims owed the creditor were not cross-collateralized. Lien discharge is warranted

even if FmHA were cross-collateralized because the Plan binds the parties to their consensual agreement and the rigorous Section 1129(b) lien retention requirements are not applicable to the Plan confirmed by 1129(a). The Court shall enter an appropriate order.