**In re Donald V. HUNTER, Jr., and Ellen Kay Hunter, Ch. 11 Case No. 486–00326, Debtors.**

**In re HUNTER FARMS, INC., A South Dakota Family Farm Corporation, Ch. 11 Case No. 486–00327, Debtor.**

**Bankruptcy No. 486–00327.**

United States Bankruptcy Court, D. South Dakota, S.D.

Sept. 11, 1992.

---

Charles F. Carbiener, Ft. Myers, Fla., for debtor.

Craig Peyton Gaumer, Asst. U.S. Atty., Sioux Falls, S.D., for U.S.

PEDER K. ECKER, Bankruptcy Judge.

Debtors' counsel, Attorney Charles F. Carbiener, filed a Motion to Compel Discharge of Liens and filed a memorandum in support of the motion. Debtors have consolidated their Chapter 11 bankruptcy proceedings and seek to compel the Farmers Home Administration [hereinafter FmHA] to discharge and release all liens and mortgages of record held against the Debtors' property. The motion states that Debtors have tendered full payment of FmHA's secured claim plus full payment of the present value of the unsecured payments due FmHA as provided for in the Amended Plan of Reorganization. Debtors further state that FmHA refuses to release the liens and encumbrances and refuses to accept the payment. A Supplemental Memorandum in Support of the Motion was filed.

Assistant United States Attorney Craig Peyton Gaumer filed a response on behalf of FmHA stating that no payment has been tendered or refused, but, rather, Debtors have made a settlement offer to the FmHA. The offer has been to pay the unsecured claim at its "present value." FmHA states this is contrary to the confirmed plan, deprives the FmHA of the benefit of its bargain, and essentially requests a second discounting on the allowed claim. FmHA believes it is entitled to payment of the remaining unsecured claim "promised by the debtors, accepted by the FmHA, and approved by this Court in the confirmed Chapter 11 Plan."

An evidentiary hearing was held, and the Court took this matter under advisement. The issue presented is whether a debtor fulfills its obligations pursuant to a confirmed Chapter 11 plan of reorganization by offering the present value of an allowed unsecured claim when the confirmed plan promises to pay the creditor a dividend representing ten percent of the unsecured claim, at which time, liens and encumbrances held by the creditor will be released, and when there is no prepayment clause provided in the plan.

I.

Two exhibits received into evidence at the hearing provide the appropriate factual background regarding FmHA's treatment under the plan. Debtors' Amended Plan of Reorganization, confirmed August 19, 1987, classified FmHA as the holder of a secured and an unsecured claim. The plan treats the $40,318.46 secured claim with fifteen annual payments of $3,754.41 each, based on a 4.5% rate of interest. As to the $88,187 unsecured claim, the plan states, "The debtors propose to return a 10% dividend to this class payable in ten (10) annual payments without interest." The liens and encumbrances are held "until paid in accordance with this Plan." As of June 12,

1992, $53,007.82 had been paid toward the dividend, leaving only four payments of $8,818.70 each payable annually.

In support of the motion, Debtors rely on the "universal concept of the time value of money," also known as present value. The present value concept is that since a creditor being repaid over a period of time receives interest as compensation for being deprived of the possession and use of its money, a debtor can fully satisfy a loan obligation prior to the maturity date by tendering the present value of a future payment calculating an amount to be repaid using an appropriate market rate of interest. Debtors point out that the time value of money is supported by public policy and usage of trade and is also contemplated and referred to by the Bankruptcy Code and its legislative history.

The present value argument is valid, Debtors believe, because the plan obligates the Debtors to satisfy the *value* of FmHA's secured and unsecured claims. This interpretation, according to Debtors, is "merely proper implementation" of the present value concept. Once this obligation has been performed, the underlying debt will be extinguished, and pursuant to Article 9, Section 404(1) of the Uniform Commercial Code, FmHA will be obligated to release its liens and encumbrances or be subject to sanctions and damages if a termination of the security interest is not filed within ten days after payment is received and a demand is made by the Debtors. In sum, Debtors' position is that, under this plan, they should be allowed to tender an amount today, which, if invested at the appropriate rate of interest, would yield $35,274.80 four years from now, which is the sum of the remaining four annual payments of $8,818.70. In exchange, FmHA should be compelled to release the liens and encumbrances currently held against Debtors' property.

In its response to Debtors' Supplemental Memorandum in Support of the Motion, FmHA contends that allowing a present value payment would, in effect, be a second discounting on FmHA's allowed claim. Section 1129(a)(7) of the Bankruptcy Code states the debtor must pay the value of a creditor's claim as determined on the effective date of the plan. The Code does not allow that amount to be altered once a Chapter 11 plan has been confirmed. Debtors did not object to FmHA's proof of claim, and FmHA agreed to Debtors' offer of payment (i.e., 10% dividend). The offer "did not contain any suggestion that the debtors could discount the claim to a present value," and once confirmed, 11 U.S.C. § 1141(a) states that the terms and provisions bind both debtors and creditors. FmHA also states that the plan was drafted by Debtors and it did not identify the dividend as a future value of payments, but instead described it as a "dividend to the General Unsecured and Undersecured Creditors." Since there is no provision in the plan to allow a discounting of the claim to present value, FmHA believes Debtors are not entitled to do so.

## II.

■ It is somewhat uncommon for a debtor to be able to satisfy a claim earlier than contemplated by a confirmed plan's terms and payment schedule. Usually, the subject of prepayment is discussed in the context of promissory notes, mortgages, or some other instrument which is an integral part of a mortgage transaction. Within the realm of real estate transactions, the general rule is that a mortgagor has no right to pay off his obligation prior to its stated maturity date. Vicki A. Huffman, Annotation, *Construction and Effect as to Interest Due of Real Estate Mortgage Clause Authorizing Mortgagor to Prepay Principal Debt*, 86 A.L.R.3d 599, 603 (1978). In the event that a prepayment provision does exist, a "penalty" or "premium" is often required to protect the mortgage lender against rate fluctuations. Paul Goldstein Et Al., Real Estate Transactions 396–97 (2d ed. 1988); *see American Fed. Sav. v. Mid–America Service*, 329 N.W.2d 124 (S.D.1983). And although a prepayment clause entitles early repayment of all or some part of the debt, there is no reduction in the total amount to be paid back simply because of early repayment. Due to the unlikely situation of

prepaying plan payments in bankruptcy reorganizations, it is no wonder there are no Bankruptcy Code provisions dealing with present value or prepayment of plan payments.

As noted by Debtors' counsel, there are Bankruptcy Code provisions and legislative history that contemplate present value, such as 11 U.S.C. §§ 1111(b), 1129(a)(7), 1129(b)(2)(A), and 1325(a)(4), but these provisions relate to the court's examination of how a proposed plan has valued property that will be distributed pursuant to a confirmed plan. "The Court may confirm a plan ... [if the plan property has] a value equal to the allowed amount of their secured claims.... The property is to be valued as of the effective date of the plan, thus recognizing the time-value of money." H.R.Rep. No. 595, 95th Cong., 1st Sess. 413 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6369. Thus, the Bankruptcy Code does recognize and support the time value of money concept as it relates to making determinations of confirmation, but there are no specific provisions specifically referring to present value payments after a plan has been confirmed.

■ Whether or not a prepayment clause is explicitly drafted into a document or the language of a document is construed to create a right to prepay, the general rules and principles of interpretation of written instruments, particularly contracts and deeds, will guide courts in making a proper resolution of related issues. Interpretation of plan provisions is no different. "A Plan is a contract consisting of a novation of the previous agreements between the parties." *In re Cook,* 126 B.R. 575, 583 (Bankr. D.S.D.1991). Proper interpretation of plan provisions looks to the intent of the parties, the particular language of the document, and the conditions on which the promises were made. *In re Cook,* Civ. 91–3026 (D.S.D. June 23, 1992). *See In re Amarex, Inc.,* 96 B.R. 330, 332 (W.D.Okla.1989).

In *Cook,* the confirmed plan contained a prepayment clause permitting debtors to prepay plan payments due. *In re Cook,* 126 B.R. at 578. This Court concluded that the Cooks could pay the present value of two future unsecured payments and then obtain FmHA's release of encumbrances.

*Id.* at 583. On appeal, however, the District Court reversed this Court's decision as to the present value payments, only because the plan contemplated that the two payments would be tendered *after* real property and chattel property payments were completed, which, according to the facts, had not yet been completed. *In re Cook,* Civ. 91–3026, slip op. at 8. The District Court concluded that it was premature for it to rule on the proper value, present or full, of the unsecured payments. *Id.* In other words, the timing of when unsecured payments were due allowed the District Court to avoid the issue of whether tendering present value payments was appropriate under the facts of that case.

The result is that, in addition to a lack of Bankruptcy Code provisions dealing with this issue, there are also no bankruptcy decisions dispositive of this present value issue, either. The subject of prepayment clauses found in bankruptcy case law is usually presented in the context of whether a creditor is entitled to enforce a prepayment premium contained in a bond, promissory note, or other typical financial instrument against a debtor, and, generally, courts must "engage in a fact specific inquiry into the particular circumstances surrounding the secured creditor and the debtor in the bankruptcy proceeding involved." *In re Public Service Co. of New Hampshire,* 114 B.R. 813, 818 (Bankr.D.N.H. 1990). Nonetheless, resolution of the issue at bar can also be achieved by using the general rules of interpretation and construction and considering the facts of this case, in particular, the intent of the parties as expressed in the confirmed plan provisions.

■ "When parties make a bilateral contract, they exchange promises in the expectation of a subsequent exchange of performances." E. Allan Farnsworth, Contracts § 8.1, at 536 (1982). In this case, Debtors promised to "return a 10% dividend ... in ten (10) annual payments without interest." The objective of this promise is to pay a 10% dividend to the two members of Class 14, one of which is FmHA. The method and timing of ten annual payments adds nothing to the promise. That portion of the phrase is simply a

schedule provided for the parties' convenience and establishes a formal point in time for the completion of the contractual promise. *Western Town Site Co. v. Lamro Town Site Co.*, 31 S.D. 47, 139 N.W. 777 (1913). In return, FmHA promised to release all liens and encumbrances currently held against Debtors' property when paid "in accordance with this Plan." Based on these promises, it does not appear that the parties intended to permit payment of a present value of the promised dividend. Neither does the language of the plan suggest that Debtors' obligation is merely to satisfy a present value. The plan's unambiguous treatment of the unsecured claim is payment of ten percent of FmHA's unsecured claim. Contrary to Debtors' statement that equating a present value payment as a second discounting "totally ignores the universal concept of the time value of money," the Court believes that allowing a present value payment of the ten percent dividend in exchange for a release of liens and encumbrances totally ignores and alters the promises contained in the confirmed plan. Both debtors and creditors are bound by a confirmed plan, and neither party is entitled to any better treatment than that which the plan allowed. 11 U.S.C. § 1141(a); *In re Cook*, 126 B.R. at 583.

Factually, this case is different from *Cook* in that this plan does not include any prepayment clause. Debtors have no explicit right to prepay plan payments. The Court, however, could construe a right to prepay based upon the plan's language which states that the liens will be held "until" the dividend is paid, as well as the language that states that the ten annual payments "shall continue on each subsequent December 31st until fully paid." It appears, therefore, that even without any express prepayment clause, Debtors may make full or partial payments which could conceivably satisfy the promised dividend prior to the scheduled completion date. FmHA's duty to release its liens and encumbrances would not be due, however, until such time as the full ten percent dividend has been paid.

The Restatement Second of Contracts states that a condition is "an event, not certain to occur, which must occur, unless occurrence is excused, before performance under a contract becomes due." The motion to compel FmHA's discharge of liens requires the Court to first determine if FmHA's duty to make the release is conditional or not. Second, if the duty is conditional, it must determine what the event is on which FmHA's duty is conditioned. Clearly, the condition making FmHA's performance due is the payment of the ten percent dividend. Once this has been completed, FmHA is under a duty to perform and release the liens and encumbrances held against Debtors' property. Receiving an offer of settlement, or even accepting tender of the current value of the undersecured claim, is not the event which must occur before FmHA's performance under this plan becomes due.

## CONCLUSION

The Court finds that as to the unsecured claim of FmHA, this plan was drafted, accepted, and confirmed with the understanding that bilateral promises were exchanged by Debtors and FmHA. Debtors promised to pay FmHA a dividend representing ten percent of FmHA's unsecured claim in exchange for FmHA's promise to release its liens and encumbrances held against Debtors' property. There is no indication that the parties intended to allow a prepayment of the present value of the unsecured claim. And while there is no explicit prepayment clause allowing the prepayment of the ten percent dividend, the Court finds that, based upon the language of the plan, the parties' intentions as expressed by the plan, and the concept of contractual conditions, Debtors may prepay the ten percent dividend prior to the ten-year time frame and, in return, obtain a release of liens and encumbrances. This is the fair and equitable result contemplated by the plan. And as the plan's conclusion states, "[T]he debtor has given every thought to the complex problems confronting him and, with the assistance of counsel, has devised and formulated this Plan, with the hope that equitableness and fairness of the Plan will be considered by the parties in interest whose consent is necessary to perfect it."

The Court shall enter an appropriate order.

### ORDER DENYING MOTION TO COMPEL DISCHARGE OF LIENS

In response to and in compliance with the Letter Decision regarding Debtors' Motion to Compel Discharge of Liens entered this day, it is hereby

ORDERED that since there is no indication that the parties intended to allow a prepayment of the present value of the dividend promised to be paid under the confirmed Chapter 11 plan of reorganization, the motion is denied and FmHA is not compelled to discharge liens and encumbrances held against Debtors' property until the dividend representing ten percent of FmHA's unsecured claim is paid. In this regard, it is further

ORDERED that Debtors may, pursuant to the confirmed plan's language, prepay any or all of the payments constituting the promised dividend even though the plan has no explicit prepayment clause.

DATED at Sioux Falls, South Dakota, this 11th day of September, 1992.