In re UNR INDUSTRIES, INC., UNARCO Industries, Inc., UNR, Inc., UNR–ROHN, Inc. (Alabama), UNR–ROHN, Inc. (Indiana), Jobal Tube Co., Inc., UNR Products, Inc., and Folding Carrier Corp., Debtor–Appellants,

v.

BLOOMINGTON FACTORY WORKERS, Appellees.

No. 92 C 6396.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 22, 1994.

Bret Andrew Rappaport, Richard Marcus Bendix, Jr. and Malcolm M. Gaynor, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for appellants.

Donald E. Johnson and Pamela S. Hollis, Hollis & Johnson, Chicago, IL, for appellees.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

To be sure, our prior characterization of this bankruptcy case as "procedurally muddled" was a gross understatement. *In re UNR Industries, Inc.*, No. 92 C 6396, slip op. at 5, 1994 WL 23074 (N.D.Ill. January 15, 1994). Although a Plan of Reorganization was approved by the bankruptcy court in 1989, and has been affirmed on appeal by both this court and the Seventh Circuit ("Confirmation Appeal"), we are now faced with the appeal of a subsequent order of the bankruptcy court classifying some $18 million in claims against UNR. Before us is a motion by UNR Industries and a number of its subsidiaries ("UNR") for reconsideration of our January 15, 1994 Order denying UNR's appeal from Judge Coar's July 28, 1992 Order ("Classification Order") classifying the claims of Unarco Bloomington Plant Workers ("Workers"). For the forgoing reasons, we grant UNR's motion to reconsider and find that we have jurisdiction over this appeal. In addition, we reverse and remand to the bankruptcy court for a ruling on (1) the classification of Workers' claims and (2) the validity of the bankruptcy court's 1990 contempt order against Workers' counsel.

## I. Background[1]

On July 29, 1982, after filing for Chapter 11 bankruptcy protection, UNR requested approval from Judge Merrick—the emergency bankruptcy judge—to pay pre-petition workers compensation claims. The judge authorized such payments in an order which referred to and incorporated UNR's written request ("1982 Order"). However, the 1982 Order did not explicitly define what constituted a worker's compensation claim.

In 1989, UNR filed its Plan of Reorganization ("Plan") and Disclosure Statement, which divided UNR's stock into six classes of creditors. Class 2 claims, which were to be paid in full by UNR, consisted of Worker's Compensation claims as defined in the 1982 Order.[2] Class 5 claims were Asbestos–Disease Claims, and were to be paid out only through the Asbestos–Disease Trust ("Trust"). Unlike those in Class 2, Class 5 claimants would not be fully compensated for their losses, but would be paid some approved fraction of their claim. Workers, whose asbestos disease claims amount to roughly $18,000,000, filed objections to both the Disclosure Statement and the Plan, arguing—among other things—that it was unclear how the Workers' claims were classified under the Plan. These objections were overruled and the Plan was approved.

As a condition precedent to entry of the Confirmation Order, the bankruptcy court entered an Injunction Order in June 1989 prohibiting asbestos-disease claimants from litigating their claims outside the Trust.[3]

---

1. We assume familiarity with this case, and only reiterate facts necessary to our decision. For a review of the case history, see *Unarco Bloomington Factory Workers v. UNR Industries*, 124 B.R. 268 (N.D.Ill.1990); *In re UNR Industries, Inc.*, 143 B.R. 506 (Bankr.N.D.Ill.1992).

2. The Plan also stated that "the [a]llowed [a]mount of all claims in Class 2 shall be paid in the ordinary course of the respective Debtors' businesses pursuant to the terms of the Court's July 29, 1982 Order granting Application to Authorize Payment of Pre–Petition Workmens' [sic] Compensation Claims ... and the Issuance of Rebates to Customers." *In re UNR Industries, Inc.*, No. 92 C 6396, slip op. at 2, 1994 WL 23074 (N.D.Ill. January 15, 1994).

3. In pertinent part, the Injunction Order provided that:

 All Entities are permanently restrained and enjoined from taking any action whatsoever for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claims, Interests, Asbestos–Disease Claims or Asbestos–Property Claims (other than actions brought to enforce any right or obligation under the Plan, which action shall be in conformity with and compliance with the provisions of the Plan) against the Debtors, any Property of the Estates of the Debtors, any of the Debtor's Affiliates, New UNR, any of its Affiliates and any of the insur-

Despite the 1989 Injunction and an injunction issued in 1987,[4] Workers' attorney James Walker ("Walker") initiated and pursued numerous actions against UNR on behalf of Workers. In response, UNR filed a Motion for Order of Contempt, which Judge Coar granted on March 20, 1990 after notice and hearing ("1990 Contempt Order"). In the 1990 Contempt Order Judge Coar found that Walker had abrogated the 1987 Injunction, the 1989 Injunction and 11 U.S.C. § 524(a)(2).[5]

On July 30, 1991, Walker filed another petition with the Illinois Industrial Commission regarding Workers' claims. Consequently, UNR again moved for a civil contempt order. Before hearing this motion, Judge Coar issued his July 29, 1992 Classification Order—ruling on an issue we remanded to him in our December 1990 Order—holding that some of the Workers' occupational disease claims properly fell within Class 2. In keeping with this conclusion, Judge Coar vacated his 1990 Contempt Order against Walker and denied the pending contempt motion.

On August 6, 1992, UNR appealed Judge Coar's Classification Order, as well as his vacation of the 1990 Contempt Order and denial of its 1992 motion. That appeal was initially assigned to Judge Shadur. At a status hearing before us on August 18, 1992, UNR asserted that since the Classification Order had grouped Workers' claims into both Class 2 and Class 5, Workers had no standing to challenge the Confirmation Appeal then before us. UNR filed a motion to end further proceedings in the Confirmation Appeal on September 22, 1992. Over Workers' objections, we granted that motion on December 10, 1992, and ended proceedings on the Confirmation Appeal. Our decision was appealed by Workers and affirmed by the Seventh Circuit. *In the Matter of UNR Industries, Inc.,* 20 F.3d 766 (7th Cir.1994).

Subsequently, after reassignment to us from Judge Shadur, we received this appeal by UNR of the Classification Order, the vacation of the 1989 Contempt Order, and the denial of the 1991 contempt motion. We originally dismissed UNR's appeal of the Classification Order on May 26, 1993, ruling that UNR was judicially estopped from arguing contrary to its position in September 1992 that all proceedings below had ended. However, we later reconsidered and denied Workers' motion to dismiss UNR's appeal since we had in fact been appraised—albeit not in an obvious manner—of the Classification Appeal prior to our December 10, 1992 Order ending all proceedings. Finally, on January 15, 1994, we held that we lacked jurisdiction to hear the Classification Appeal since any disposition on the Classification Appeal would (1) countermand our December 10, 1992 Order, and (2) potentially run afoul of the Confirmation Order then up on appeal to the Seventh Circuit. However, we did not dispose of the appeals of Judge Coar's vacation and denial of contempt rulings against Walker. Rather, we requested supplemental briefing on the finality of these orders, our jurisdiction over their appeal, and the appropriate standard of review.

These supplemental briefs have been filed by both parties. In its Supplemental Reply Brief, UNR abandons its appeal of the bankruptcy court's denial of its 1991 motion to hold Walker in contempt. Therefore, we need not address that issue. However, in what has become par for the course, UNR now moves us to reconsider our January 15, 1994 Order finding that we lacked jurisdiction over the Classification Appeal.

## II. Discussion

Because our disposition of the Classification Appeal will bear on the appeal of the contempt order, we first address the reconsideration of our January 15, 1994 Order.

---

ance carriers or brokers in the Insurance Litigation ...
*In re UNR Industries, Inc.,* 143 B.R. at 514.

**4.** The 1987 Injunction explicitly prohibited Walker from instituting or continuing any further administrative or judicial actions against UNR on behalf of Workers without prior court approval.

**5.** The 1990 Contempt Order also enjoined Walker from "[t]aking any action, naming UNR as a respondent, or continuing an existing proceeding in which UNR is a respondent, in support of his efforts to advance the cause of Applicants."

We then examine Judge Coar's decision to vacate the 1990 Contempt Order.

### A. Classification Appeal

In our January 15, 1994 Order we denied UNR's appeal of the Classification Order for want of jurisdiction. UNR now urges us to reconsider that decision and reach the merits of its appeal. We reconsider the threshold issue of whether we have jurisdiction to hear this appeal, and if so, we next consider its merits.

#### (1) Jurisdiction Over Classification Appeal

 District courts are empowered to hear appeals from the bankruptcy courts when the order under review is either a final judgment or, if leave of court is granted, an interlocutory order. 28 U.S.C. § 158(a). While the Classification Order may well be final for purposes of a bankruptcy appeal,[6] we have no need to decide this issue since we previously granted UNR leave to appeal Judge Coar's Classification Order. Therefore, this Classification Appeal properly falls within our jurisdiction.

 However, as we observed in our January 15, 1994 Order, and as Workers point out in their briefs, review of the Classification Order could potentially undermine the Confirmation Appeal which we ended in 1992 and which the Seventh Circuit recently affirmed. We closed all further proceedings in the Confirmation Appeal because, given Judge Coar's ruling that Workers had both Class 2 and Class 5 claims, Workers had no standing to challenge the confirmation of the Plan of Reorganization. Were we now to reverse this ruling by Judge Coar, Workers may then have had standing in the Confirmation Appeal and our December 1992 Order would be nullified.

Although this concern makes our decision more difficult, we fortunately have the Seventh Circuit's recent ruling on the Confirmation Appeal to elucidate our path. In disposing of the Confirmation Appeal, the court held that sufficiently powerful reasons did not exist to justify an alteration of the Plan of Reorganization. *In the Matter of UNR Industries, Inc.,* 20 F.3d at 770–71. Although the term "equitable mootness" was discarded, *id.* at 769, the court used the concept behind that expression to find that it was too late in the day for Workers to challenge the Plan of Confirmation. The court was appraised during oral argument of the existence of the Classification Appeal before us, and explicitly recognized that we would still be ruling on the classification issue. *Id.* at 768. Obviously, Workers' standing to appeal the Confirmation Order did not concern the court. In sum, we should not shy away from the merits of the Classification Appeal since, regardless of whether Workers have Class 2 or Class 5 claims, the Confirmation Appeal has been concluded.

 A further obstacle we must overcome before reaching this appeal is Workers' contention that our December 1990 Order was a final order which disposed of the entire UNR bankruptcy appeal. If this were so, then the Classification Appeal would have merged with the Confirmation Appeal and been conclusively decided by the Seventh Circuit. In such a scenario we would no longer have jurisdiction to decide the Classification Appeal. However, this argument must fail for two reasons. First, while it may be the case generally that a district court's final order merges with all prior interlocutory orders, and thus appeal must be had of all orders at the same time, bankruptcy court orders are of a different breed. *See supra* note 6. Because finality is a much more flexible concept in the realm of bank-

---

6. As opposed to the strict standard of finality that governs the appeal of district court orders under 28 U.S.C. § 1291, a "somewhat relaxed sense of finality ... traditionally characterizes bankruptcy appeals." *In re Jartran, Inc.,* 886 F.2d 859, 861 (7th Cir.1989) (quoting *J. Catton Farms, Inc. v. First National Bank of Chicago,* 779 F.2d 1242, 1250 (7th Cir.1985)). Rather, a bankruptcy court order is final if "it terminates what, but for the bankruptcy, would be a stand-alone suit...."

*In the Matter of Szekely,* 936 F.2d 897, 899 (7th Cir.1991). This relaxed standard is utilized "because of the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy." *In the Matter of Kilgus,* 811 F.2d 1112, 1116 (7th Cir.1987). Under this relaxed standard, Judge Coar's Classification Order would be final since it conclusively resolved a "stand-alone" issue—i.e., the proper interpretation of the Plan of Reorganization.

ruptcy appeals, it follows that the disposition of a particular bankruptcy appeal will not necessarily dispose of all the issues underlying the bankruptcy case. Simply because we closed out further proceedings on the Confirmation Appeal does not necessarily mean that no further orders of the bankruptcy court can be appealed to us. Second, if Workers' contentions were correct and the classification issue were actually part of the Confirmation Appeal, then the classification issue would have been appealed directly from the bankruptcy court to the Seventh Circuit Court of Appeals. Clearly, this is not an acceptable path of appellate procedure. Rather, the Confirmation Order was appealed to this court and then to the Seventh Circuit, and only now are we reaching the separate issue of the Classification Order. Such piecemeal appeals, while foreign to traditional civil litigation, are commonplace in the world of bankruptcy appeals. *See In the Matter of Kilgus*, 811 F.2d at 1116 (justifying piecemeal bankruptcy appeals). Thus, we find that the Classification Appeal did not merge with the Confirmation Appeal, and we are not precluded from deciding the merits of this appeal.

■ Finally, Workers also argue—with some merit—that UNR has made its bed with regard to the posture of the Classification Appeal. In essence, UNR argued to us in its September 22, 1992 motion that the Classification Order had resolved all issues before us and that nothing further needed to be done. It is no surprise, then, that we initially denied UNR's motion to appeal the Classification Order on grounds of judicial estoppel—that is, we barred UNR from arguing a position contrary to that presented to us in September 1992. We subsequently vacated that decision and allowed the Classification Appeal to go forward in May 1993; however, Workers have renewed their argument that judicial estoppel should preclude UNR from bringing this appeal.

While we agree that UNR has not exercised the candor one would expect from a litigant in federal court, we decline to exercise our discretion with regard to judicial estoppel. *See In the Matter of Cassidy*, 892 F.2d 637, 642 (7th Cir.) (application of judicial estoppel within a court's sound discretion), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). This is because UNR's position in the Confirmation Appeal was not "clearly inconsistent" with the position taken in the instant Classification Appeal. *Id.* at 641. While it is true that further disputes between UNR and Workers existed in 1992, it is also true—as represented by UNR—that with respect to the *Confirmation Appeal* there were no longer any unresolved issues in 1992. Since Judge Coar ruled that Workers had both Class 2 and Class 5 claims, under our December 1990 Order Workers had no standing to challenge the Plan. The Classification Appeal—which essentially asks us to decide if the Plan was interpreted correctly—does not deal with the issue of whether the Plan was properly confirmed by the bankruptcy court. Because UNR's two positions may be reconciled, we decline to apply the doctrine of judicial estoppel to their prosecution of the Classification Appeal. *See id.* at 642.

Finally, we observe that our ruling today will not undermine the Seventh Circuit's disposition of the Confirmation Appeal, since we are not asked to modify the Plan in any way. Indeed, we would only be able to modify the Plan if reasons of sufficient magnitude justified our doing so. *See, e.g., In re Longardner & Associates, Inc.,* 855 F.2d 455, 460 (7th Cir.1988) (plan may only be revoked upon showing of fraud), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). Rather, the issue before us is one of interpretation of the Plan. In other words, we must determine whether the term "Workmens' [sic] Compensation claims" as used in defining Class 2 claims under the Plan should be interpreted to include Workers' claims for injuries stemming from asbestos exposure. Therefore, upon reconsideration of our January 15, 1994 Order, we find that we do have jurisdiction over the Classification Appeal.

### (2) Interpretation of the Plan

■ Our 1990 Remand Order asked the Bankruptcy Court to interpret the Plan to determine whether Workers held Class 2 claims, Class 5 claims, or both. We employ the abuse of discretion standard when reviewing a bankruptcy court's interpretation

of a plan of reorganization that it has confirmed. *In the Matter of Weber,* 25 F.3d 413, 416 (7th Cir.1994). "[F]actual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and *de novo* standards, respectively." *In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R.,* 3 F.3d 200, 206 (7th Cir.1993).

Judge Coar ruled that the term "Workmens' Compensation claims," as used in the 1982 Order and incorporated by reference into the Plan, encompassed "all statutory claims for employment-related medical conditions, including claims arising under the Workers' Occupational Diseases Act." 143 B.R. at 518. Judge Coar first looked to see whether the words "Workmens' Compensation claims" were clear on their face. He found that they were ambiguous, since—at least in Illinois—workers compensation claims have both a technical meaning and familiar meaning. *Id.* at 517. Because of this ambiguity, the court next considered extrinsic evidence to ascertain "whether Judge Merrick intended the term 'Workmens' Compensation claims' to include asbestos-disease claims brought by former employees under the Workers' Occupational Disease Act." *Id.* at 517–18. The court found that "Judge Merrick probably did not have any specific intent" with regard to the classification of claims such as those held by Workers. Indeed, the court observed that the meaning of "Workmens' Compensation claims" was not even raised during the 1982 hearing before Judge Merrick. Nonetheless, Judge Coar found that Judge Merrick "understood" the term to include claims under the Workers' Occupational Diseases Act. *Id.* at 518.

The court then dismissed UNR's arguments that this interpretation of "Workmen's Compensation claims" (1) would be unreasonable for Judge Merrick to have had, (2) would conflict with the legal basis for UNR's 1982 request for authorization to pay prepetition workers compensation claims, (3) would conflict with the parties' intentions, (4) would violate the Bankruptcy Code, and (5) would conflict with other parts of the Plan and the Disclosure Statement. *Id.* at 518–25. The court also rejected UNR's contention that Workers were barred from arguing their position because of the doctrines of laches, judicial estoppel, and collateral estoppel. *Id.* at 525–27. Finally, because of the inconsistency between the 1990 Contempt Order and court's Classification Order, Judge Coar vacated his 1990 order holding Walker in contempt. *Id.* at 527.

■ Judge Coar did not err when he held that the term "Workmens' Compensation claims" as used in the 1982 Order was ambiguous. Although Illinois law differentiates between work-related accidental injuries and work-related diseases, *see* 820 ILCS 305/1–305/30 (Workers' Compensation Act); 820 ILCS 310/1–310/27 (Workers' Occupational Diseases Act), such a distinction does not exist in most states. Further, evidence introduced at the hearing indicated that UNR administrators themselves did not hold fast to this distinction. *In re UNR Industries, Inc.,* 143 B.R. at 517. Given these facts it was not an abuse of discretion for the court to conclude that the term was ambiguous, and therefore to consider surrounding circumstances at the time of formation to construe the meaning of the Plan.

■ However, we find that although Judge Coar conducted a thorough analysis and expended considerable effort in searching for the meaning of "Workmen's Compensation claims," he used the improper analysis. Generally, the most important factor to consider when interpreting a disputed court order is the intention of the judge entering the order, rather than the parties contesting it. However, a plan of reorganization differs from a contested order in important respects. First, a plan of reorganization is proposed by the parties themselves, rather than imposed on them by the court. As such, it possesses many of the characteristics of an agreed order or consent decree as opposed to a contested order. Second, a plan of reorganization bears close analogy to a private contract between the debtor and its creditors.

At its simplest, a plan is an offer of promises made by a debtor and accepted by the creditors following serious and frequently protracted negotiations. In many of its most vital aspects, a plan is a kind of contract involving, as it does, matters of offer, acceptance, performance and the

like. Accordingly, disputed provisions should be interpreted in light of general contract principles.

*In re L & V Realty Corp.,* 76 B.R. 35, 37 (Bankr.E.D.N.Y.1987) (quoting *In the Matter of United Merchants and Manufactures, Inc.,* 24 C.B.C. 220, 226–27 (Bankr.S.D.N.Y. 1981)). Although a plan must be approved by the bankruptcy court, this approval does not change the essential terms of the agreement or their meaning. Because a plan is often more akin to a contract than a disputed order, general contract principles ought to be applied to its interpretation. *See Transcontinental & Western Air v. Koppal,* 345 U.S. 653, 656, 73 S.Ct. 906, 907–08, 97 L.Ed. 1325 (1953) (state law applies to contract interpretation).

▆ The court below relied on *In re Doty,* 129 B.R. 571 (Bankr.N.D.Ind.1991), to conclude that the intent of the judge, as opposed to that of the parties, was relevant in construing the terms of the 1982 Order. 143 B.R. at 516, 522. However, the bankruptcy court misread the analysis and holding of *Doty.* In that case, the bankruptcy court recognized the similarity between a plan of reorganization and a contract or consent decree. *In re Doty,* 129 B.R. at 590–91. Indeed, after a thorough discussion of the relevant authority, the court in *Doty* concluded that the order at issue confirming a plan of reorganization was analogous to a contract, and therefore state law contract principles should be used to construe its terms. *Id.* at 591. This proposition—that a plan of reorganization should be interpreted according to contract principles—has been recognized by other courts both before and after *Doty. See, e.g., In re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981) ("[the plan of reorganization] represents a kind of

consent decree which has many attributes of a contract and should be construed basically as a contract"); *In the Matter of Penrod,* 169 B.R. 910, 916–17 (Bankr.N.D.Ind.1994) (plan is essentially a contract sanctioned by the court, and construed according to contract principles); *In re Hunter,* 144 B.R. 871, 874 (Bankr.D.S.D.1992) (same); *cf. In the Matter of Coil,* 680 F.2d 1170, 1172 (7th Cir.1982) (bankruptcy court must consider the parties' intent when construing obligation memorialized in divorce decree); *Brunswick Corp. v. Chrysler Corp.,* 408 F.2d 335, 357 (7th Cir. 1969) (considering intent of parties when interpreting consent judgment).[7] We find this manner of interpreting a plan of reorganization persuasive.

▆ In sum, the bankruptcy court incorrectly assumed that the term "Workmens' Compensation claims"—as used in the Plan and the 1982 Order—should be interpreted according to what Judge Merrick thought it meant. Rather, since a plan of reorganization is more analogous to an agreed order or consent decree, the court below should have applied state contract law when construing it. Under Illinois law, the proper inquiry would have been to focus on what the parties to the Plan of Reorganization intended the term "Workmens' Compensation claims" to mean. *See Allen Archery, Inc. v. Precision Shooting Equipment, Inc.,* 865 F.2d 896, 899 (7th Cir.1989) (quoting *Richards v. Liquid Controls Corp.,* 26 Ill.App.3d 111, 325 N.E.2d 775, 781 (2d Dist.1975)). If the parties had a common understanding as to its definition, then that meaning should govern. In other words, if the court on remand can ascertain that the parties intended Class 2 claims to include (or not to include) Occupational Disease claims, then this understanding will control.[8]

---

7. The court below also relied on *United States v. 60.22 Acres of Land,* 638 F.2d 1176 (9th Cir. 1980), for the proposition that the intent of the court controls. That case is inapposite, since it deals with proper interpretation of a contested condemnation judgment unrelated to a bankruptcy, rather than the proper interpretation of a plan of reorganization.

8. At first blush, the existence of a common understanding with regard to the Plan may seem absurd given the reality of this very appeal.

However, while it is true that Workers objected to the Plan and Disclosure Statement because neither one explicitly indicated whether their claims were classified in Class 2 or Class 5, this does not necessarily mean that Workers did not *understand* the Plan to give them only Class 5 claims. Indeed, their opposition to the Confirmation Order and their prosecution of the Confirmation Appeal suggest just the opposite. Nonetheless, we are not in as good a position as the bankruptcy court to make a determination as

▮ Alternatively, instead of having any independent understanding on the issue, the parties may have intended the parameters of Class 2 to be defined solely by what the 1982 Order dictated—which itself is an ambiguous document. Although that order was approved during an ex parte proceedings, it still bears closer resemblance to an agreed order than a disputed one. It was presented by UNR along with a number of its creditors, and was approved pursuant to the Necessity Doctrine—ie., it was entered because it was deemed to be in the best interests of both the debtor and its creditors. Therefore, if the parties to the Plan intended the 1982 Order to wholly control the characterization of Class 2 claims, the bankruptcy court should interpret that Order consistent with state law contract principles. In such a case, the intent of the parties that were present at the approval of the 1982 Order would be controlling.

▮ The court below focused on the intent of the judge who approved the 1982 Order.[9] However, this intent would only be relevant if (1) the parties to the Plan intended the 1982 Order to control, and (2) the 1982 order was contested such that no true "intent" of the parties existed.

Because the court below did not engage in the proper inquiry, we cannot be certain whether these issues were considered. Nor can we divine the answer to these questions from our vantage point. Therefore, the appropriate disposition of the Classification Appeal is to reverse and remand to the bankruptcy court for proceedings consistent with this opinion.

### B. Vacation of 1990 Contempt Order

UNR also asks us to review the bankruptcy court's vacation of its March 1990 contempt order. In 1990, after notice and hearing, Judge Coar granted UNR's motion holding Walker in civil contempt because his continued prosecution of claims before the Illinois Industrial Commission violated the court's 1987 Injunction Order, its 1989 Injunction Order, and Section 524(a)(2) of the Bankruptcy Code. However, in 1992, upon reaching its decision that Workers possessed both Class 2 and Class 5 claims, the court vacated its 1990 Contempt Order on the grounds that Walker could only have violated the 1989 Injunction Order if Workers did not have Class 2 claims. 143 B.R. at 527.

▮ At the outset, we observe that the order vacating the contempt order is bound up with the Classification Order. We therefore have jurisdiction over it to the same extent as we have jurisdiction over the Classification Appeal. Orders from a bankruptcy court granting or denying motions to hold parties in civil contempt have the same force and effect as orders of a district court. F.R.Bankr.P. 9020(c). Such orders are therefore reviewed for clear error or abuse of discretion. *Lakefield Telephone Co. v. Northern Telecom, Inc.*, 970 F.2d 386, 391 (7th Cir.1992) (citing *Walaschek & Associates, Inc. v. Crow*, 733 F.2d 51, 53 (7th Cir.1984)).[10]

to whether a common intent existed, and thus make no finding on this issue.

9. While we do not reach the issue of whether the court's conclusion as to Judge Merrick's intent was clearly erroneous, we do express some doubts as to its accuracy. In particular, the court below found that Judge Merrick had no "specific intent" with regard to this issue, and that the meaning of "Workmens' Compensation claims" may not have been discussed at all. 143 B.R. at 518. Yet, on the same page the court concluded that Judge Merrick "understood" the term to have a meaning which encompassed Workers' claims. *Id.* Additionally, rather than finding evidence that UNR intended the term to have a broad meaning, the court could only conclude that "it would not necessarily have been illogical or counterproductive" for UNR to

have such an intention. However, since we find that Judge Merrick's intent may well have been irrelevant to construing the 1982 Order, we decline to review the finding of the court below.

10. UNR argues that since orders of a bankruptcy court granting or denying injunctions have the effect of final orders of a district court, the court below did not have the power to vacate its order because "[a] bankruptcy court obviously does not have the authority to vacate an order of the district court." UNR's Supplemental Reply Brief at 7. This argument is spurious. Clearly, the bankruptcy court has the power to vacate or amend its own orders. F.R.Bankr.P. 9024 (incorporating F.R.Civ.P. 60). The language in Rule 9020 according contempt orders of the bankruptcy court the same force and effect as orders of the district court is intended simply to

Despite this deferential standard of review, we must reverse and remand the bankruptcy court's vacation of the 1990 Contempt Order. As discussed above, the bankruptcy court reached its conclusion that Workers possessed both Class 2 and Class 5 claims—the underlying rationale for its decision to vacate—by applying the incorrect test. Until the bankruptcy court conducts the proper inquiry for determining whether Workers claims fall into Class 2 or Class 5, we cannot accurately determine whether Walker violated the many injunctions which existed at that time.[11] Therefore, we remand this issue to the bankruptcy court for a determination consistent with its resolution of the Classification Appeal.

### III. Conclusion

For the forgoing reasons, the bankruptcy court's 1992 Classification Order and its vacation of the 1990 Contempt Order are reversed and the cause is remanded for proceedings consistent with this opinion. It is so ordered.

---

allow the bankruptcy court to issue contempt orders, not to remove from its power the ability to vacate such orders.

11. UNR urges us to reverse the vacation order on the grounds that Walker violated the 1987 injunction. This injunction specifically ordered Walker not to initiate or proceed against UNR unless authorized by the court. While UNR charges that his actions before the Illinois Industrial Commission clearly violated this injunction regardless of the classification issue, Walker contends that if Workers do have Class 2 claims, then the Plan of Reorganization provided the required authorization for him to proceed with Workers' compensation claims. We find this latter argument persuasive, and thus decline UNR's request to reverse the vacation order outright.