*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 05b0003n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: ROGER SCHEIDERER, <br><br> Debtor. <br><br> ——————————————— <br><br> ROGER SCHEIDERER, <br><br> Appellant, <br><br> v. <br><br> PRODUCERS CREDIT CORPORATION, <br><br> Appellee. <br> ——————————————— | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 04-8066 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division
Chapter 7 Case No. 01-65198

Submitted: May 4, 2005

Decided and Filed: May 19, 2005

Before: GREGG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

———————————

**COUNSEL**

**ON BRIEF:** Grady L. Pettigrew, Jr., COX, STEIN & PETTIGREW, Columbus, Ohio, for Appellant. Robert A. Bell, Jr., VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee.

---

**OPINION**

---

PER CURIAM. Roger Scheiderer (the "Debtor") appeals an order enforcing his obligations under his confirmed Chapter 11 plan. Upon examination of the record and the briefs, the Panel unanimously agrees that oral argument is not needed because the decisional process would not be aided by oral argument. *See* Fed. R. Bankr. P. 8012. For the reasons that follow, we conclude that the order on appeal should be **AFFIRMED**.

## I. ISSUE ON APPEAL

The issue presented is whether the bankruptcy court erred in determining that the Debtor's Second Amended Plan of Reorganization requires him to pay to Producers Credit Corporation, then known as Producers Livestock Credit Association ("Producers"), the annual sum of $25,000 plus interest.

## II. JURISDICTION AND STANDARD OF REVIEW

An order interpreting and enforcing a Chapter 11 plan constitutes a final order, *see UNR Indus., Inc. v. Bloomington Factory Workers (In re UNR Indus., Inc.)*, 173 B.R. 149, 154 n.6 (N.D. Ill. 1994), so the order being challenged may be appealed as of right. 28 U.S.C. § 158(a)(1). The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). Accordingly, the Panel has jurisdiction to decide this appeal.

A bankruptcy court's interpretation of the provisions of a plan it has confirmed is entitled to "full deference," and its exercise of equitable powers to "breathe life" into the provisions of a plan is reviewed under an abuse of discretion standard. *Terex Corp. v. Metro. Life Ins. Co. (In re Terex*

*Corp.)*, 984 F.2d 170, 172 (6th Cir. 1993); *see United States v. Graham (In re Monclova Care Ctr., Inc.)*, No. 01-3636, 2003 WL 463486, at **2 (6th Cir. Feb. 18, 2003); *In re Dow Corning Corp.*, No. 01-CV-71843-DT, 2004 WL 764654, at *3 (E.D. Mich. Mar. 31, 2004). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor of Baltimore, Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (citations omitted).

### III. FACTS

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 28, 2001. He filed a proposed Plan of Reorganization and a Disclosure Statement on May 23, 2002, an Amended Plan of Reorganization and a Debtor's Amended Disclosure Statement on September 16, 2002, and a Second Amended Plan of Reorganization and a Second Amended Disclosure Statement on October 8, 2002. The Second Amended Plan of Reorganization provides that the claim of Producers constitutes Class B-3, and provides the following treatment of that claim:

> Producers will be paid an annual payment of $25,000.00 on the anniversary date of confirmation. An interest rate of 8% will apply to its claim and a 2% interest rate will be applied to the solvent estate factor of Producers Livestock's Claim.
>
> Producers will receive upon recovery 50% of the proceeds of the Eagle Capital litigation estimated at $100,000, plus the proceeds from sale or refinance of assets. Upon payment to Producers Livestock from recovery from Eagle Capital litigation or refinance of debt or sale of assets, annual payments to Producers Livestock will be adjusted to provide for payment for the allowed secured claim on or before the tenth (10th) anniversary date of the confirmation of the plan.

(Second Amended Plan of Reorganization, art. VIII, at 8, App. at 73.)  The plan provides that the bankruptcy court retained jurisdiction "to secure the execution of the provisions of this Plan." (*Id.*, art. X, § 1, App. at 76.)  Appendix D to the plan (App., at 83) states that the annual "Secured Debt Payments by Roger Scheiderer" include payments to Producers of $25,000.00 plus interest.  The plan specifically incorporates all of the appendices by reference.  (Second Amended Plan of Reorganization, art. I, ¶ 8, App. at 68.)

The disclosure statement was approved by an order entered on November 5, 2002, and a confirmation hearing was conducted on December 16, 2002.  Following that hearing, the bankruptcy court confirmed the plan – presumably the Second Amended Plan of Reorganization – on February 12, 2003.  There is no indication in the record that Producers received any sum from the Eagle Capital litigation or from the proceeds of a sale or refinancing, so there does not appear to be a need for a recomputation of the ten-year amortization of the debt.

On February 19, 2004, the Debtor sent Producers a check for $15,000 and, on April 5, 2004, the Debtor paid an additional $10,000.  The Debtor refused to pay any interest as part of its annual payment, so Producers filed a Motion to Require Compliance with Second Amended Plan of Reorganization on March 18, 2004.  The bankruptcy court conducted a hearing on the motion on June 15, 2004, and granted the motion by an order entered on June 30, 2004.  On July 12, 2004, the Debtor filed a motion to reconsider, and that motion was denied on July 28, 2004.  The Debtor timely filed a notice of appeal on August 6, 2004.

## IV.  DISCUSSION

The only argument made by the Debtor in seeking reversal of the bankruptcy court's order is as follows:

> The action of the Bankruptcy Court was erroneous because it was inconsistent with the Plan confirmed and the evidence submitted in support of the Plan.  Appellant's Plan included an exhibit of annual Plan payments.  In the exhibit, Appellant's payment to Appellee was clear and did not need clarification.  Second, Appellant committed in his Plan to pay Appellee's Claim in full before completion of the Plan.  The source of payment was Appellant's income, litigation proceeds or

4

> proceeds of refinance. Because the estate was solvent, Appellant had a duty to pay the full claim. Appellee had a right under the Plan to receive the full payment but not to dictate the amount and timing of the plan payments.

(Brief of Appellant Roger Scheiderer, at 3.) Article VIII of the plan provides for annual payments to Producers of $25,000 and that the claim would bear interest. If there is any question that the annual payments were to include accrued interest, as well as $25,000 principal, that question was resolved by Appendix D to the plan, which the Debtor acknowledges is "clear and did not need clarification." The appendix explicitly provides for annual payments to Producers of $25,000 "plus interest," and nothing in the plan or its appendices provides that interest is to be deferred. Moreover, even if Article VIII and Appendix D leave any ambiguity, "[T]he debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them." *In re Tucker*, 231 B.R. 284, 287 (Bankr. E.D. Tenn. 1999) (construing Chapter 13 plan against debtor) (quoting *Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 591 (11th Cir. 1985)); *accord, e.g., Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319 B.R. 324, 333 (Bankr. D. Conn. 2005) (resolving ambiguities in Chapter 11 plan against debtor as drafter).

It is the plan that "dictate[s] the amount and timing of the plan payments," and the plan provides for Producers to receive annual payments of $25,000 plus interest starting on the first anniversary date of confirmation, February 12, 2004. A reasonable person could agree with the bankruptcy court's interpretation of the plan and direction that the Debtor comply therewith, so its order does not constitute an abuse of discretion.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order granting the Motion to Require Compliance with Second Amended Plan of Reorganization filed by Producers is hereby **AFFIRMED**.

5